IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

PEOPLE OF THE STATE OF ILLINOIS       )
*ex rel.* LISA MADIGAN, Attorney       )
General of the State of Illinois,      )
                                       )
    Plaintiff,                      )
                                       )
       vs.                        )   No.  3:06-cv-50115
                                       )
AKZO NOBEL COATINGS, INC., (f/k/a      )
Reliance Universal, Inc.), a Delaware  )
corporation, ALUMAX INC., a Delaware   )
corporation, ATWOOD ENTERPRISES, INC., )
an Illinois corporation, NEWELL        )
RUBBERMAID, INC. (successor to Amerock  )
Corporation, Berol Corp. and Parker Pen )
Company), a Delaware corporation,      )
BRIDGEVIEW AEROSOL, LLC (successor to  )
Hydrosol, Inc.),  a New York limited   )
liability company, COATINGS AND        )
CHEMICALS CORP., an Illinois           )
corporation, CRAWFORD LABORATORIES,    )
INC., an Illinois corporation,         )
DUPLI-COLOR PRODUCTS COMPANY, a        )
division of SHERWIN-WILLIAMS COMPANY,  )
an Ohio corporation, E. I. DUPONT DE   )
NEMOURS AND COMPANY, a Delaware        )
corporation, GENERAL MOTORS            )
CORPORATION, a Delaware Corporation,   )
H HOLDING CORPORATION (f/k/a Hydrosol, )
Inc.), an Illinois corporation,        )
HAMILTON SUNDSTRAND CORPORATION,       )
an Illinois corporation, HARLEY-       )
DAVIDSON, INC., a Wisconsin            )
corporation, HASBRO, INC., a Rhode     )
Island corporation, HENTZEN COATINGS,  )
INC., a Wisconsin corporation,         )
HONEYWELL INTERNATIONAL, INC., a       )
Delaware corporation, INVITROGEN       )
CORPORATION, a Delaware corporation,   )
MATTHEWS PAINT COMPANY, a Delaware     )
corporation, REYNOLDS METALS COMPANY,  )

a Delaware corporation, RHEEM )
MANUFACTURING COMPANY, a Delaware )
corporation, EARL SCHEIB OF ILLINOIS, )
an Illinois corporation, SHEBOYGAN )
PAINT COMPANY, INC., a Wisconsin )
corporation, THE GLIDDEN COMPANY, )
a Delaware corporation, THE TESTOR )
CORPORATION, an Ohio corporation, )
THE VALSPAR CORPORATION, a Delaware )
corporation, UNIVERSAL CHEMICAL & )
COATINGS, INC., a Delaware corporation, )
SEYMOUR OF SYCAMORE, INC., an )
Illinois corporation, and WHITTAKER )
CORPORATION, a Delaware corporation, )
)
     Defendants. )

## REMEDIAL ACTION CONSENT DECREE

# TABLE OF CONTENTS

I.      BACKGROUND...................................................................................... 2

II.     JURISDICTION...................................................................................... 5

III.    PARTIES BOUND.................................................................................. 5

IV.     DEFINITIONS........................................................................................ 6

V.      GENERAL PROVISIONS...................................................................... 14

VI.     PERFORMANCE OF THE WORK........................................................ 18

VII.    PERIODIC REVIEW.............................................................................. 25

VIII.   QUALITY ASSURANCE, SAMPLING,
        and DATA ANALYSIS........................................................................... 26

IX.     ACCESS AND ENVIRONMENTAL LAND
        USE CONTROLS.................................................................................... 28

X.      REPORTING REQUIREMENTS............................................................ 33

XI.     ILLINOIS EPA APPROVAL OF PLANS
        AND OTHER SUBMISSIONS................................................................ 37

XII.    CONTRACTOR/LICENSED PROFESSIONAL
        ENGINEER.............................................................................................. 39

XIII.   ASSURANCE OF ABILITY TO COMPLETE WORK............................ 41

XIV.    COMPLETION REPORT AND CERTIFICATION
        OF COMPLETION.................................................................................. 43

XV.     EMERGENCY RESPONSE.................................................................... 48

XVI.    REIMBURSEMENT OF RESPONSE COSTS AND
        SETTLEMENT PAYMENTS BY PERFORMING,
        CASH-OUT AND COVENANT BENEFICIARY
        SETTLING DEFENDANTS..................................................................... 50

XVII.   INDEMNIFICATION AND INSURANCE............................................. 57

XVIII.  FORCE MAJEURE.................................................................................. 60

XIX.    DISPUTE RESOLUTION....................................................................... 62

XX.      STIPULATED PENALTIES......................................................... 64

XXI.      COVENANTS NOT TO SUE BY PLAINTIFF................................. 69

XXII.      COVENANTS BY SETTLING DEFENDANTS................................ 76

XXIII.      EFFECT OF SETTLEMENT; CONTRIBUTION
                PROTECTION...................................................................... 79

XXIV.      ACCESS TO INFORMATION.................................................... 81

XXV.      RETENTION OF RECORDS..................................................... 83

XXVI.      NOTICES AND SUBMISSIONS................................................ 84

XXVII.      EFFECTIVE DATE.................................................................. 87

XXVIII.      RETENTION OF JURISDICTION............................................. 87

XXIX.      APPENDICES........................................................................ 87

XXX.      ADMINISTRATIVE RECORD AND COMMUNITY
                RIGHT TO KNOW................................................................. 88

XXXI.      MODIFICATION..................................................................... 89

XXXII.      TERMINATION...................................................................... 89

XXXIII.      LODGING AND OPPORTUNITY FOR PUBLIC COMMENT........... 91

XXXIV.      SIGNATORIES/SERVICE....................................................... 92

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

PEOPLE OF THE STATE OF ILLINOIS )
*ex rel*. LISA MADIGAN, Attorney )
General of the State of Illinois, )
                                  )
      Plaintiff,                  )
                                  )
            vs.                   )      No.  3:06-cv-50115
                                  )
AKZO NOBEL COATINGS, INC., (f/k/a )
Reliance Universal, Inc.), a Delaware )
corporation, ALUMAX INC., a Delaware )
corporation, ATWOOD ENTERPRISES, INC., )
an Illinois corporation, NEWELL  )
RUBBERMAID, INC. (successor to Amerock )
Corporation, Berol Corp. and Parker Pen )
Company), a Delaware corporation, )
BRIDGEVIEW AEROSOL, LLC (successor to )
Hydrosol, Inc.),  a New York limited )
liability company, COATINGS AND  )
CHEMICALS CORP., an Illinois     )
corporation, CRAWFORD LABORATORIES, )
INC., an Illinois corporation,   )
DUPLI-COLOR PRODUCTS COMPANY, a  )
division of SHERWIN-WILLIAMS COMPANY, )
an Ohio corporation, E. I. DUPONT DE )
NEMOURS AND COMPANY, a Delaware  )
corporation, GENERAL MOTORS      )
CORPORATION, a Delaware Corporation, )
H HOLDING CORPORATION (f/k/a Hydrosol, )
Inc.), an Illinois corporation,  )
HAMILTON SUNDSTRAND CORPORATION,  )
an Illinois corporation, HARLEY- )
DAVIDSON, INC., a Wisconsin      )
corporation, HASBRO, INC., a Rhode )
Island corporation, HENTZEN COATINGS, )
INC., a Wisconsin corporation,   )
HONEYWELL INTERNATIONAL, INC., a )
Delaware corporation, INVITROGEN )
CORPORATION, a Delaware corporation, )
MATTHEWS PAINT COMPANY, a Delaware )

1

corporation, REYNOLDS METALS COMPANY, )
a Delaware corporation, RHEEM )
MANUFACTURING COMPANY, a Delaware )
corporation, EARL SCHEIB OF ILLINOIS, )
an Illinois corporation, SHEBOYGAN )
PAINT COMPANY, INC., a Wisconsin )
corporation, THE GLIDDEN COMPANY, )
a Delaware corporation, THE TESTOR )
CORPORATION, an Ohio corporation, )
THE VALSPAR CORPORATION, a Delaware )
corporation, UNIVERSAL CHEMICAL & )
COATINGS, INC., a Delaware corporation, )
SEYMOUR OF SYCAMORE, INC., an )
Illinois corporation, and WHITTAKER )
CORPORATION, a Delaware corporation, )
)
     Defendants. )

## REMEDIAL ACTION CONSENT DECREE

### I.  BACKGROUND

1.    On February 1, 2007, the People of the State of Illinois,

*ex rel.* Lisa Madigan, Attorney General of the State of Illinois, on

her own motion and at the request of the Illinois Environmental

Protection Agency ("Illinois EPA"), filed a Second Amended Complaint

("Complaint") in this matter pursuant to Section 107 of the

Comprehensive Environmental Response, Compensation, and Liability

Act ("CERCLA"), 42 U.S.C. § 9607.

2.    The State in its complaint seeks, *inter alia*: (1)

reimbursement of costs incurred by the State for Response actions at

the Acme Solvent Reclaiming site located at 1915 20th Avenue in the

City of Rockford, County of Winnebago, Illinois, ("Site") together

with accrued interest; and (2) a declaratory judgment that

Defendants are responsible for all future costs incurred by the State to address releases of hazardous substances at the Site.

3. Certain Defendants, as owners of the real property comprising the Site, have agreed to permit access for performance of the Work and institute and record environmental land use controls as specified in Paragraph 77 herein (hereinafter "Owner Settling Defendants"). The Owner Settling Defendants are listed on Appendix A.

4. Certain Defendants have agreed to perform Work at the Site (hereinafter "Performing Settling Defendants") as further specified herein. The Performing Settling Defendants are listed on Appendix B.

5. Certain Defendants have agreed to contribute money to a fund for performance of the Work (hereinafter "Cash-Out Settling Defendants"). The Cash-Out Settling Defendants are listed on Appendix C.

6. The Settling Defendants do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the Complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

7. The Performing Settling Defendants have performed a Site Investigation to determine the nature and extent of contamination at and from the Site. Based on the results of the Site Investigation,

Performing Settling Defendants have submitted a document entitled: *Site Investigation Report, Remedial Objectives Report and Remedial Action Plan* (hereinafter referred to as "RAP"). The RAP is attached hereto and incorporated herewith as Appendix D.

8.   Illinois EPA approved the RAP on October 3, 2008.

9.   Performing Settling Defendants shall undertake the Work specified in the RAP, and upon completion shall submit to the State for approval a Remedial Action Completion Report ("RACR") in accordance with this Consent Decree and its appendices.

10.   Based on the information presently available, the State believes that the Work will be properly and promptly conducted by the Performing Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

11.   The RAP approved by the State and to be performed by the Performing Settling Defendants in accordance with the terms of this Consent Decree and its appendices shall constitute a Response action for the purposes of Section 113(j) of CERCLA.

12.   The Parties anticipate that additional responsible parties may desire to settle their alleged liability for generating hazardous substances that were released at the Site after entry of this Remedial Action Consent Decree ("Consent Decree"). This Consent Decree provides the opportunity for additional responsible parties to settle their alleged liability by becoming Covenant Beneficiary Settling Defendants as further described in this Consent Decree.

4

13. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

## II. JURISDICTION

14. This Court has jurisdiction over the subject matter of this action pursuant to Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b) and 28 U.S.C. § 1331. This Court also has personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent Decree and the underlying Complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

15. This Consent Decree applies to and is binding upon the Parties to this Consent Order, which are: the People of the State of Illinois by and through the Illinois Attorney General, the Illinois EPA as represented by the Illinois Attorney General and the Settling Defendants as defined herein. Any change in ownership or

5

corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

16. Performing Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing Performing Settling Defendants with respect to the Site or the Work, and Performing Settling Defendants shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Performing Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Performing Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Performing Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. **DEFINITIONS**

17. Unless otherwise expressly provided herein, terms used in this Consent Decree, which are defined in CERCLA or in regulations promulgated under CERCLA, shall have the meaning assigned to them in

CERCLA or in such regulations. Whenever terms listed below in Paragraphs 17 through 53 are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply.

18. "Acme Rockford Group Trust" shall mean the trust fund established pursuant to the Acme Rockford Group Trust Agreement.

19. "Acme Rockford Group Trust Agreement" shall mean the agreement attached as Appendix F.

20. "Cash-out Settling Defendants" shall mean those parties identified in Appendix C, including their respective owners, shareholders, officers, directors, affiliates, parents, subsidiaries, successors, predecessors, agents and assigns, whether pursuant to contract, operation of law, or otherwise. Cash-out Settling Defendants shall not perform Work at the Site.

21. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 et seq.

22. "Certification of Completion of Remedial Action" shall mean the written certification issued by Illinois EPA to the Performing Settling Defendants pursuant to Section XIV (Completion Report and Certifications of Completion) upon approval of the Remedial Action Completion Report.

23. "Consent Decree" shall mean this Remedial Action Plan Consent Decree and all Appendices attached hereto (listed in Section XXIX), and any approved modifications thereto. In the event of

7

conflict between this Consent Decree and any appendix, this Consent Decree shall control.

24. "Covenant Beneficiary Settling Defendants" shall mean those parties, including their respective owners, shareholders, officers, directors, affiliates, parents, subsidiaries, successors, predecessors, agents and assigns, whether pursuant to contract, operation of law, or otherwise, added as Settling Defendants to this Consent Decree after its effective date, with the State's approval, using the provisions of Paragraph 105 titled *Settlement Payments by Cash-Out and Covenant Beneficiary Settling Defendants*, subsection b. and the Covenant Beneficiary Form found at Appendix G.

25. "Covenant Beneficiary Form" shall mean the documents attached as Appendix G, which provide the means for future Settling Defendants identified herein as Covenant Beneficiary Settling Defendants to be added to this Consent Decree, upon the State's approval.

26. "Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or State holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State holiday, the period shall run until the close of business of the next working day.

27. "Environmental Land Use Control" or "ELUC" shall mean an institutional control that is used to impose land use limitations or requirements related to environmental contamination, as set forth at

8

35 Ill. Adm. Code 742.1010. A model ELUC is attached as Appendix J. Activities or uses that may be limited or required include, but are not limited to, prohibition of use of groundwater for potable purposes, restriction to industrial/commercial uses, operation or maintenance of engineered barriers, or worker safety plans.

28. "Future Response Costs" shall mean all costs not inconsistent with the National Contingency Plan incurred on and after July 1, 2008, including, but not limited to, direct and indirect costs, that the State incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs and laboratory costs.

29. "Illinois EPA" shall mean the Illinois Environmental Protection Agency and any successor departments or agencies of the State.

30. "Interest" shall mean interest at the rate specified for interest on investments of the Hazardous Substance Superfund established under Subchapter A of Chapter 98 of Title 26 of the U.S. Code, compounded on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

31. "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

32. "Owner Settling Defendants" shall mean those persons who hold title to the properties comprising the Site, identified at Appendix A hereto, including their respective owners, shareholders, officers, directors, affiliates, parents, subsidiaries, successors, predecessors, devisees, heirs, agents and assigns, whether pursuant to contract, operation of law, or otherwise;

33. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

34. "Parties" shall mean the Illinois Attorney General, the Illinois EPA as represented by the Illinois Attorney General, and the Settling Defendants.

35. "Past Response Costs" shall mean all costs not inconsistent with the National Contingency Plan, including, but not limited to, direct and indirect costs, that the State incurred at or in connection with the Site during the period January 1, 2001 through June 30, 2008.

36. "Performance Standards" shall mean the remediation objectives and other measures of achievement of the goals set forth in this Consent Decree, including the RAP.

37. "Performing Settling Defendants" shall mean those Settling Defendants identified on Appendix B and who are performing the Work, including their respective owners, shareholders, officers, directors, affiliates, parents, subsidiaries, successors, predecessors, agents and assigns, whether pursuant to contract, operation of law, or otherwise.

38. "Plaintiff" shall mean the People of the State of Illinois acting by and through the Illinois Attorney General.

39. "Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by Performing Settling Defendants to implement the RAP, in accordance with the RAP and the RAWP and any other plans approved by Illinois EPA.

40. "Remedial Action Plan" or "RAP" shall mean the one document developed by the Performing Settling Defendants entitled: *Site Investigation Report, Remedial Objectives Report and Remedial Action Plan* attached hereto and incorporated herewith as Appendix D, and any approved amendments thereto. This document includes the Site Investigation Report, the Remedial Objectives Report and the Remedial Action Plan. The RAP was approved by Illinois EPA on October 3, 2008.

41. "Remedial Design Work Plan" or "(RDWP)" shall mean the report developed by Performing Settling Defendants pursuant to Paragraph 63 of this Consent Decree and approved by Illinois EPA, and any approved amendments thereto.

42. "Remedial Design" or "(RD)" shall mean the report developed by Performing Settling Defendants pursuant to Paragraph 64 of this Consent Decree and approved by Illinois EPA, and any approved amendments thereto.

43. "Remedial Action Work Plan" or "RAWP" shall mean the document to be developed pursuant to Paragraph 65 of this Consent

Decree and approved by Illinois EPA, and any approved amendments thereto.

44. "Remedial Action Completion Report" or "RACR" shall mean the report developed by Performing Settling Defendants pursuant to Section XIV (Completion Report and Certification of Completion) of this Consent Decree and approved by Illinois EPA.

45. "Response" shall have the meaning provided in Section 101(25) of CERCLA, 42 U.S.C. 9601(25).

46. "Response Costs" shall mean both Past Response Costs and Future Response Costs.

47. "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

48. "Settling Defendants" shall mean all Owner Settling Defendants identified in Appendix A, Performing Settling Defendants identified in Appendix B, Cash-out Settling Defendants identified in Appendix C and any Covenant Beneficiary Defendants added to this Consent Decree after its effective date.

49. "Site" shall mean the property formerly owned and operated by Acme Solvents Reclaiming, Inc. located at 1915 20th Avenue, City of Rockford, County of Winnebago, Illinois, consisting of three parcels identified as Block 25 Lot 3 (PIN 11-36-262-002), Block 25 Lot 4 (PIN 11-36-262-003), and Block 25, N 1/2 Lots 5 and 6 (PIN 11-36-252-004) together with any property upon which action is necessary to implement the Work. The Site is depicted generally on the map attached as Appendix E. The Site does not include that

property known as the Acme Solvents NPL Site, United States Environmental Protection Agency No. 0579, located at Morristown, Winnebago County, Illinois.

50. "State" shall mean the State of Illinois, including the Illinois EPA and Illinois Attorney General.

51. "Supervising Contractor" shall mean the principal contractor retained by Performing Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

52. "Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

53. "Work" shall mean all activities Performing Settling Defendants are required to carry out under this Consent Decree, including the RAP, RDWP, Remedial Design and RAWP and any approved amendments, operation and maintenance, and any additional Site work performed by Performing Settling Defendants or required pursuant to Paragraphs 124 (pre-certification reservations), 125 (post-certification reservations), or 127 (general reservation of rights) of this Consent Decree, except those activities required by Section XXV (Retention of Records).

## V.  GENERAL PROVISIONS

### 54.  Objectives of the Parties

The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the implementation of Response actions at the Site, to reimburse Response Costs of the Plaintiff, and to resolve the claims and potential claims related to the Site of Plaintiff against Settling Defendants as provided in this Consent Decree.

### 55.  Commitments by Performing Settling Defendants

Performing Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the RAP, the RDWP, the Remedial Design, the RAWP, and any approved amendments thereto, and any other work plans, standards, specifications, and schedules set forth herein or developed by Performing Settling Defendants and approved by Illinois EPA pursuant to this Consent Decree. Performing Settling Defendants shall reimburse the State for Past Response Costs and Future Response Costs as provided in this Consent Decree.

### 56.  Commitments by Owner Settling Defendants

Each Owner Settling Defendant shall provide access to their property for implementation of the Work and shall implement any environmental land use control on their property, as provided herein.  Each Owner Settling Defendant agrees that it shall not interfere with the implementation of the RAP by the Performing Settling Defendants and/or the State.  Further, if any Owner

Settling Defendant transfers any interest in its property that is the subject of this Consent Decree prior to an ELUC being recorded on its property, the Owner Settling Defendant shall obtain an agreement from the grantee to abide by any access agreement and record an ELUC as provided in this Consent Decree.

57. Commitments by Cash-Out Settling Defendants

Each Cash-Out Settling Defendant shall pay its agreed upon share of the cost of the Work into the Acme Rockford Group Trust pursuant to the terms of the Acme Rockford Group Trust Agreement.

58. Commitments by Covenant Beneficiary Settling Defendants

Each Covenant Beneficiary Settling Defendant shall pay its agreed upon share of the cost of the Work into the Acme Rockford Group Trust pursuant to the terms of the Acme Rockford Group Trust Agreement.

59. Compliance with Applicable Law

All activities undertaken by Performing Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Performing Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the RAP, the RDWP, the Remedial Design, the RAWP and any other approved plans submitted pursuant to this Consent Decree. The activities conducted pursuant to this Consent Decree, if approved by Illinois EPA, shall be considered to be consistent with the NCP.

60. Permits

    a.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

61. Notice to Successors-in-Title, Obligations for Transferring Interests in Property

    a.    Within fifteen (15) days after the entry of this Consent Decree, each Owner Settling Defendant shall submit to the Illinois EPA for review and approval a notice, substantially in the form of that attached hereto as Appendix H, to be filed with the Recorder of Deeds, Winnebago County, State of Illinois, which shall provide notice to all successors-in-title that the Site is the subject of a complaint for cost recovery and declaratory judgment due to past releases of hazardous substances and that a Consent Decree requiring implementation of the remedy by Performing Settling Defendants, as well as the requirement of Owner Settling Defendants to record and preserve land and water use restrictions to maintain the integrity and protectiveness of the remedy in the form of an ELUC, has been entered in federal court. Such notice shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court. Each Owner Settling Defendant shall record the notice on its property within ten (10 days) of the Illinois EPA's approval of the notice. Each Owner Settling Defendant shall provide Illinois EPA and the Performing

Settling Defendants with certified copies of the recorded notice within ten (10) days of recording such notice.

b. At least thirty (30) days prior to the transfer of any interest in the Site, or any portion thereof, including, but not limited to, fee interests, leasehold interests, and mortgage interests, the Owner Settling Defendant transferring such interest shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which consent for access has been given that confers a right of access to the Site as more fully described in Section IX (Access and Environmental Land Use Controls), and (iii) any instrument by which any Owner Settling Defendant has restricted the use of such property as more fully described in Section IX (Access and Environmental Land Use Controls). At least thirty (30) days prior to such transfer, the Owner Settling Defendant transferring the interest shall also give written notice to the Illinois EPA and the Performing Settling Defendants of the proposed transfer, including the name and address of the transferee, and the date on which notice of the Consent Decree, Access Agreement and ELUC was given to the transferee.

c. Prior to recording an ELUC on the Site or any portion of the Site, if any Owner Settling Defendant transfers an interest in the Site through sale, lease, deed or otherwise, the instrument transferring complete or partial possession or ownership of the Site shall be recorded with the Winnebago County Recorder of Deeds and shall provide that:

i. The Owner Settling Defendant reserves a right of access for the Performing Settling Defendants and the State as more fully described in Section IX (Access and Environmental Land Use Controls) of the Consent Decree entered in the matter of People of the State of Illinois v. Akzo Nobel Coatings, et al., Case No. 3:06-cv-50115 for the purpose of conducting any activity related to this Consent Decree; and

ii. The grantee shall record and preserve land and water use restrictions to maintain the integrity and protectiveness of the remedy in the form of an Environmental Land Use Control ("ELUC") in accordance with Section IX (Access and Environmental Land Use Controls) of the Consent Decree entered in the matter of People of the State of Illinois v. Akzo Nobel Coatings, et al., Case No. 3:06-cv-50115.

## VI. **PERFORMANCE OF THE WORK**

62. Selection of Contractor.

a. All aspects of the Work to be performed by Performing Settling Defendants pursuant to Sections VI (Performance of the Work), VII (Periodic Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor. The Performing Settling Defendants have identified the following Supervising Contractor:

18

MWH Americas, Inc.
175 West Jackson Blvd., Suite 1900
Chicago, IL    60604-2814

Illinois EPA has approved MWH Americas, Inc. as the Performing Settling Defendants Supervising Contractor. If at any time the Performing Settling Defendants propose to change the approved Supervising Contractor, Performing Settling Defendants shall give such notice to Illinois EPA and must obtain an authorization to proceed from Illinois EPA, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.    During the course of the Work, Performing Settling Defendants shall not change the approved Supervising Contractor without first providing advance written notice to the State and obtaining advance written approval by the State, which approval shall not be unreasonably withheld.

c.    Supervision of Activities

All Site remediation activities shall be conducted by, or under the supervision of, a Licensed Professional Engineer ("LPE") in good standing in Illinois. All plans and reports submitted by Defendants for review and approval shall be prepared by or under the supervision of an LPE.

63.    Remedial Design Work Plan and Remedial Design

a.    Within thirty (30) days after entry of this Consent Decree, Performing Settling Defendants shall submit to Illinois EPA a Remedial Design Work Plan (RDWP) for approval. The RDWP shall include plans and schedules for implementation of all pre-design

19

tasks identified in the RAP, including, but not limited to, plans and schedules for the completion of the items listed below in this paragraph. These items will be based on site-specific factors and include, but are not limited to, the following items:

- design sampling and analysis plan;
- a treatability study (Pilot Study); and,
- a schedule for implementation of the pilot study.

b.    Within 120 days of Illinois EPA's approval of the RDWP, the Performing Settling Defendants shall submit a Remedial Design to Illinois EPA for approval. In the event weather conditions prevent the conduct of field work for the completion of the pilot study, this period may be extended pursuant to Section XXXI (Modification). The Remedial Design shall include, at a minimum, the following:

- Results of treatability studies (Pilot Study);
- Design criteria based on the results of the treatability study (Pilot Study);
- Results of additional field sampling and pre-design work;
- Project delivery strategy;
- Preliminary plans, drawings and sketches;
- Required specifications in outline form; and,
- Preliminary construction schedule.

c.    Upon approval by Illinois EPA, the Remedial Design shall be incorporated into and become enforceable under this Consent Decree.

64.    <u>Remedial Action Work Plan</u>.

a.    Within sixty (60) days after the approval of the Remedial Design, Performing Settling Defendants shall submit to Illinois EPA a Remedial Action Work Plan or "RAWP" for the performance of the RAP at the Site.    The RAWP shall provide for construction and implementation of the remedy set forth in the RAP and Remedial Design and achievement of the Performance Standards.

b.    Upon approval by Illinois EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree.

c.    The RAWP shall include the following items listed below in this paragraph for which methodologies, plans and schedules should be included. This list will be based on site specific factors and include, but not be limited to, the following:

- The schedule for completion of the Remedial Action including all tasks identified in the RAP and RAWP;

- Schedule for developing and submitting other required plans as necessary;

- A table of soil and groundwater remediation objectives for each affected property;

21

- A list of proposed institutional controls and engineered barriers for each affected property;

- Methods for satisfying permitting requirements;

- Plans for disposal of any waste generated during implementation of the RAP;

- Procedures and plans for the decontamination of equipment and the disposal of contaminated materials; and,

- A Health and Safety Plan ("HSP") which conforms to the applicable Occupational Safety and Health Administration and Illinois EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

d.    Upon approval of the RAWP by Illinois EPA, Performing Settling Defendants shall implement the activities required under the RAWP in accordance with the schedule contained therein. Performing Settling Defendants shall submit to Illinois EPA all plans, submittals, or other deliverables required under the approved RAWP in accordance with the approved schedule for review and approval pursuant to Section XI (Illinois EPA Approval of Plans and Other Submissions). Unless otherwise directed by Illinois EPA, Performing Settling Defendants shall not commence physical Remedial Action activities at the Site prior to approval of the RAWP.

65.    Performing Settling Defendants shall continue to implement the approved Remedial Action and any amendments thereto until the

Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

66. The RAWP shall provide for the submission of a work plan to meet Tier 1 residential remediation objectives in the event that the Performing Settling Defendants are unable to obtain environmental land use controls which support the industrial/commercial clean up objectives or engineered barriers as provided in the RAP.

67. <u>Modification of the RAWP or any other Approved Plans</u>.

a. If Illinois EPA determines that modification to the work specified in the RAWP and/or in plans developed pursuant to the RAWP is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the RAP and Remedial Design, Illinois EPA may require that such modification be incorporated in the RAWP and/or such work plans. Provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the RAP .

b. For the purposes of this Paragraph 67 and Paragraph 98 only , the "scope of the remedy selected in the RAP" is:

- Meet the soil and groundwater remediation objectives identified in the RAP;

- Construction and operation of a soil vapor extraction system and air sparging system;

- Institution of a municipal groundwater use restriction ordinance and other environmental land use controls and/or engineered barriers identified in the RAP; and

- Confirmation sampling.

c. If Performing Settling Defendants object to any modification determined by Illinois EPA to be necessary pursuant to this Paragraph, Performing Settling Defendants may seek dispute resolution pursuant to Section XIX (Dispute Resolution). The RAWP and/or any other approved plans shall be modified in accordance with final resolution of the dispute.

d. Performing Settling Defendants shall implement any Work required by any modifications incorporated in the RAWP and/or in work plans developed pursuant to the RAWP in accordance with this Paragraph.

e. Nothing in this Paragraph shall be construed to limit Illinois EPA's authority to perform or require performance of further Response actions as otherwise provided in this Consent Decree.

68. Performing Settling Defendants acknowledge and agree that nothing in this Consent Decree, the RAP, the Remedial Design or RAWP constitutes a warranty or representation of any kind by Plaintiff that compliance with the Work requirements set forth in the RAP and the work plans will achieve the Performance Standards.

## VII. PERIODIC REVIEW

69. <u>Periodic Review</u>. If Illinois EPA determines, following completion of the Remedial Action as prescribed in the RAP and RAWP, that human health and the environment are not being protected by the Remedial Action, Performing Settling Defendants shall conduct any studies and investigations requested by Illinois EPA in order to permit Illinois EPA to determine whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and any applicable regulations.

70. <u>Illinois EPA Selection of Further Response Actions</u>. If Illinois EPA determines, upon such periodic review, that the Remedial Action is not protective of human health and the environment, Illinois EPA may select further Response actions for the Site in accordance with the requirements of CERCLA and the NCP.

71. <u>Opportunity To Comment</u>. Performing Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further Response actions proposed by Illinois EPA, as a result of the review conducted pursuant to Paragraph 69 above. Performing Settling Defendants and the public, if permitted to, may submit written comments for the record during the comment period.

72. <u>Performing Settling Defendants' Obligation To Perform Further Response Actions</u>. If Illinois EPA selects further Response actions for the Site under this Section, Performing Settling

Defendants shall undertake such further Response actions to the extent that the reopener conditions in Paragraph 124 or Paragraph 125 (the State's reservations of liability based on unknown conditions or new information) are satisfied. Performing Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) Illinois EPA's determination that the reopener conditions of Paragraph 124 or Paragraph 125 of Section XXI (Covenants Not To Sue by Plaintiff) are satisfied, (2) Illinois EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) Illinois EPA's selection of the further Response actions. Disputes pertaining to whether the Remedial Action is protective or to Illinois EPA's selection of further Response actions shall be resolved pursuant to Section XIX (Dispute Resolution).

73. <u>Submissions of Plans</u>. If Performing Settling Defendants are required to perform the further Response actions pursuant to Paragraph 70, Performing Settling Defendants shall submit a plan for such work to Illinois EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work) and shall implement the plan approved by Illinois EPA in accordance with the provisions of this Consent Decree.

## VIII.  QUALITY ASSURANCE, SAMPLING, and DATA ANALYSIS

74. Performing Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all design, compliance and monitoring samples in accordance with "U.S.

26

EPA Requirements for Quality Assurance Project Plans for Environmental Data Operation," (EPA QA/R5; "Preparing Perfect Project Plans" (EPA /600/9-88/087), and subsequent amendments to such guidelines upon notification by Illinois EPA to Performing Settling Defendants of such amendment. Amended guidelines shall apply only to procedures conducted after such notification. If relevant to the proceeding, the Parties agree that validated sampling data that is reviewed and approved by Illinois EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree. Performing Settling Defendants shall ensure that Illinois EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Performing Settling Defendants in implementing this Consent Decree. In addition, Performing Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted U.S. EPA methods. Accepted U.S. EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Consent Decree. Performing Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an U.S. EPA or U.S.EPA-equivalent QA/QC program. Performing Settling Defendants shall ensure that all

field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree will be conducted in accordance with accepted U.S.EPA methods.

75. Upon request, Performing Settling Defendants shall allow split or duplicate samples to be taken by Illinois EPA or its authorized representatives. Performing Settling Defendants shall notify Illinois EPA not less than fourteen (14) days in advance of any sample collection activity unless shorter notice is agreed to by Illinois EPA. In addition, Illinois EPA shall have the right to take any additional samples that Illinois EPA deems necessary. Upon request, Illinois EPA shall allow Performing Settling Defendants to take split or duplicate samples of any samples it takes as part of the Illinois EPA's oversight of Performing Settling Defendants implementation of the Work.

76. Notwithstanding any provision of this Consent Decree, the State hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, the Illinois Environmental Protection Act, 415 ILCS 5/1 *et seq.*, and any other applicable statutes or regulations.

## IX. ACCESS AND ENVIRONMENTAL LAND USE CONTROLS

77. Property Owned by Owner Settling Defendants. If the Site or any other property where access and/or environmental land use controls are required to implement this Consent Decree is owned or

28

controlled by one or more of the Owner Settling Defendants, the Owner Settling Defendant(s) shall provide:

a. <u>Access For Performing Settling Defendants</u>. In accordance with the Access Agreement attached as Appendix I, the Owner Settling Defendants shall provide access to the Performing Settling Defendants and their representatives and contractors as necessary to effectuate this Consent Decree and any modifications.

b. <u>Access for the State</u>. Commencing on the date of lodging of this Consent Decree, provide the State with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

    (1) Monitoring the Work;

    (2) Verifying any data or information submitted to the State;

    (3) Conducting investigations relating to contamination at or near the Site;

    (4) Obtaining samples;

    (5) Assessing the need for, planning, or implementing additional Response actions at the Site;

    (6) Assessing implementation of quality assurance and quality control practices as set forth in Paragraph 74 herein;

(7) Implementing the Work pursuant to the conditions set forth in Paragraph 129 of this Consent Decree;

(8) Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Performing Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9) Assessing Performing Settling Defendants' compliance with this Consent Decree; and

(10) Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

c. <u>Recording and Notice of ELUC</u>. If institutional controls are required with respect to the Site, Performing Settling Defendants shall include a proposed Environmental Land Use Control ("ELUC") in the Remedial Action Completion Report in the form attached hereto as Appendix J. Within ten (10) days of receipt of the Illinois EPA's Certification of Completion of the Remedial Action including approval of any proposed ELUC, the Performing Settling Defendants shall provide an ELUC to each affected Owner Settling Defendant, or any successor or transferee; within twenty-eight (28) days of receipt of the approved ELUC, each Owner Settling

Defendant, successor or transferee shall execute and record with the Recorder of Deeds of Winnebago County, Illinois, the approved ELUC. Within thirty (30) days of recording the ELUC, each Owner Settling Defendant, successor or transferee shall provide Illinois EPA and the Performing Settling Defendants with a certified copy of the original recorded ELUC showing the clerk's recording stamps.

78. <u>Property Not Owned by Owner Settling Defendant</u>. If the Site, or any other property where access and/or institutional controls are required to implement this Consent Decree (affected off-Site property), is owned or controlled by persons other than one or more of the Owner Settling Defendants, the Performing Settling Defendant(s) shall use their best efforts to obtain access and institutional controls as follows:

a. <u>Access</u>. Obtain an agreement from the property owner to provide access thereto for Performing Settling Defendants, their agents and contractors, as well as for the State, its agents and contractors, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 77(a) of this Consent Decree, within thirty (30) days of the date such access is determined to be necessary If Performing Settling Defendants are unable to obtain the access agreements required herein, Performing Settling Defendants shall promptly notify the Illinois EPA in writing, and shall include in that notification a summary of the steps (including requests, offers and responses thereto) that Performing Settling Defendants have

taken in attempting to comply with this Section. The State may, in its unreviewable discretion and as it deems appropriate, assist Performing Settling Defendants in obtaining such access. Performing Settling Defendants shall reimburse the State in accordance with the procedures in Section XVI (Reimbursement of Response Costs), for all costs incurred by the State in obtaining such access, including, but not limited to the cost of attorney time.

b.  <u>ELUC</u>. Obtain an agreement from an affected property owner to record an ELUC on the property which includes the additional institutional controls required to protect the remedy.

c.  <u>Recording and Notice of ELUC</u>. Include the proposed ELUC for the affected properties in the Remedial Action Completion Report. Within thirty (30) days of receipt of the Illinois EPA's Certification of Completion of the Remedial Action, the Performing Settling Defendants shall use their best efforts to cause to be executed and recorded with the Recorder of Deeds of Winnebago County, Illinois, the approved ELUC for the affected properties. Within thirty (30) days of recording the ELUC, the Performing Settling Defendants shall provide Illinois EPA with a certified copy of the original recorded ELUC showing the clerk's recording stamps.

d.  For purposes of Paragraphs 77 and 78 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access and/or ELUCs.

79. Notwithstanding any provision of this Consent Decree, the State retains all of its access authorities and rights, as well as

all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulation.

## X. REPORTING REQUIREMENTS

80. In addition to any other requirement of this Consent Decree, Performing Settling Defendants shall submit to Illinois EPA four (4) copies of written quarterly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous quarter; (b) include a summary of all results of sampling and tests and all other data received or generated by Performing Settling Defendants or its contractors or agents in the previous quarter; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous quarter; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next quarter and provide other information relating to the progress of construction; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Performing Settling Defendants have proposed to Illinois EPA or that have been approved by Illinois EPA; and (g) describe all activities undertaken in support of the Community Right

33

to Know requirements found at 415 ILCS 5/25d as outlined in Appendix P of the RAP during the previous quarter and those to be undertaken in the following quarter. Performing Settling Defendants shall submit these progress reports to Illinois EPA within twenty days after the end of the quarter following the lodging of this Consent Decree until Illinois EPA notifies Performing Settling Defendants pursuant to Paragraph 98.b. of Section XIV (Completion Report and Certification of Completion). If requested by Illinois EPA, Performing Settling Defendants shall also provide briefings for Illinois EPA to discuss the progress of the Work.

81. Performing Settling Defendants shall notify Illinois EPA of any change in the schedule described in the quarterly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven (7) days prior to the performance of the activity.

82. During performance of the Work, if any event occurs that Performing Settling Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-To-Know Act ("EPCRA"), Performing Settling Defendants shall, within 24 hours of the onset of such event, orally notify the Illinois EPA Project Manager or the Illinois EPA Project Manager's Supervisor (in the event of the unavailability of the Illinois EPA Project Manager), or, in the event that neither the EPA Project Manager or Illinois EPA Project Manager's Supervisor is available, the Emergency Response Section of the Illinois EPA at

217-782-3637. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

83. Within twenty (20) days of the onset of such an event, Performing Settling Defendants shall furnish to Illinois EPA a written report, signed by Performing Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within thirty (30) days of the conclusion of such an event, Performing Settling Defendants shall submit a report setting forth all actions taken in response thereto.

84. Performing Settling Defendants shall submit three (3) paper copies and one (1) electronic copy of all plans, reports, and all sampling and/or tests or other data obtained or generated by or on behalf of Performing Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless Illinois EPA agrees otherwise, required by the RAP, the Remedial Design Work Plan, the Remedial Design, the RAWP, or any other approved plans, to Illinois EPA in accordance with the schedules set forth in such plans.

85. All reports and other documents submitted by Performing Settling Defendants to Illinois EPA (other than the quarterly progress reports referred to above) which purport to document Performing Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of Performing Settling Defendants. Plans and reports that are hand-

delivered to the Illinois EPA shall be delivered during the Illinois EPA's normal business hours. All plans and reports submitted to the Illinois EPA shall include:

i) The full legal name, address and telephone number of the Defendants or of an authorized agent acting on behalf of Defendants, and any contact persons to whom inquiries and correspondence must be addressed;

ii) The original signature of each Defendant or of any authorized agent acting on behalf of a Defendant;

iii) The name of the LPE responsible for site activities and preparation of the plan or report, the date of preparation, registration number, license expiration date, and professional seal; and

iv) The LPE responsible for the site investigations, remedial activities, and preparation of the plans or reports shall affirm by original signature as follows:

"I attest that all site investigations or remedial activities, including review of laboratory data, that are the subject of this plan or report were performed under my direction and this document and all attachments were prepared under my direction or reviewed by me, and, to the best of my knowledge and belief, the work described in the plan or report has been designed or completed in accordance with the Act, this Order, and generally accepted engineering practices, and the information presented, including any qualified laboratory data, is accurate and complete."

## XI. ILLINOIS EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

86. After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, Illinois EPA, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) disapprove the submission, directing that Performing Settling Defendants modify the submission; or (d) any combination of the above.

87. In the event of approval, approval upon conditions, or modification by Illinois EPA, pursuant to Paragraph 86 (a), (b), or (c), Performing Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or approved with conditions by Illinois EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to any conditions imposed by Illinois EPA.

88. a. Upon receipt of a notice of disapproval pursuant to Paragraph 86(c), Performing Settling Defendants shall, within twenty-one (21) days or such longer time as specified by Illinois EPA in such notice, modify pursuant to Illinois EPA comments and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX (Stipulated Penalties), shall accrue during the twenty-one (21) day period or otherwise specified period but shall not be

payable unless the resubmission is disapproved due to a material defect as provided in Paragraphs 89 and 90.

b. Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 86 (c), Performing Settling Defendants shall proceed, at the direction of Illinois EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Performing Settling Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

89. In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by Illinois EPA, Illinois EPA may again require that Performing Settling Defendants correct the deficiencies, in accordance with the preceding Paragraphs.

90. If upon resubmission, a plan, report, or item is disapproved by Illinois EPA due to a material defect, Performing Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless Performing Settling Defendants invokes the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and Illinois EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If Illinois EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial

38

submission was originally required, as provided in Section XX (Stipulated Penalties).

91. All plans, reports, and other items required to be submitted to Illinois EPA under this Consent Decree shall, upon approval or modification by Illinois EPA, be enforceable under this Consent Decree. In the event Illinois EPA approves a portion of a plan, report, or other item required to be submitted to Illinois EPA under this Consent Decree, the approved portion shall be enforceable under this Consent Decree.

### XII. CONTRACTOR/LICENSED PROFESSIONAL ENGINEER

92. Performing Settling Defendants' have notified the State that its Contractor is:

> MWH Americas, Inc.
> 175 West Jackson Blvd., Suite 1900
> Chicago, IL    60604-2814

The Licensed Professional Engineer is:

> Chris A. Daly, PE
> MWH Americas, Inc.
> 175 West Jackson Blvd., Suite 1900
> Chicago, IL    60604-2814
> Phone:    (312)831-3415
> Fax:        (312)831-3021
> Email:   Christopher.A.Daly@us.mwhglobal.com

The LPE may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

Performing Settling Defendants may change their Contractor or LPE upon notice to, and receipt of written approval from, Illinois EPA.

93.     Illinois EPA's Project Manager is:

> Andrew Frierdich
> State Sites Unit
> Remedial Projects Section
> Illinois EPA
> 1021 N. Grand Ave. E.
> Springfield, Illinois    62794-9276
> Phone:     (217) 785-8724
> Fax:       (217) 782-3258
> Email:  andrew.frierdich@illinois.gov

Illinois EPA's alternate is Mr. Frierdich's supervisor:

> Neelu Lowder
> State Sites Unit
> Remedial Projects Section
> Illinois EPA
> 1021 N. Grand Ave. E.
> Springfield, Illinois    62794-9276
> Phone:     (217) 524-4826
> Fax:       (217) 782-3258
> Email:  neelu.lowder@illinois.gov

Plaintiff may designate other representatives, including, but not limited to, Illinois EPA employees, and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. Illinois EPA's Project Manager and alternate designee shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, Illinois EPA's Project Manger or alternate designee shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary Response action when s/he determines that

conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

## XIII.  ASSURANCE OF ABILITY TO COMPLETE WORK

94.  Within thirty (30) days of entry of this Consent Decree, Performing Settling Defendants shall establish and maintain financial security, until issuance by Illinois EPA of the Certification of Completion of the Remedial Action pursuant to Paragraph 98, financial security in the amount of $1,250,000.00, or such other amounts as Illinois EPA may approve from time to time pursuant to Paragraph 96, in one or more of the following forms such that the total financial assurance amount meets or exceeds the estimated costs of completing the Work:

(i)  A demonstration by one of the Performing Settling Defendants that it satisfies the requirements of 35 Ill. Adm. Code 724.243(f);

(ii) A surety bond guaranteeing performance of the Work issued by a financial institution licensed by the appropriate state and federal agencies to issue such bonds;

(iii)  One or more irrevocable letters of credit equaling the total estimated cost of the Work issued by a financial institution licensed by the appropriate state and federal agencies to issue such letters of credit;

(iv)  A trust fund of cash deposits dedicated to performance of the Work; or

41

(v)     Insurance coverage for performance of the Work acceptable to the State, naming the State and all Performing Settling Defendants as additional insureds.

The initial financial security amount ($1,250,000.00) is based on the future cost of the Work described in the RAP. If the results of the Remedial Design demonstrate that the Remedial Action future cost estimate exceeds this amount, then the Performing Settling Defendants financial security obligation shall increase accordingly.

95. In the event that Illinois EPA determines at any time that the financial assurances provided pursuant to this Section are inadequate, the Performing Settling Defendants shall, within thirty (30) days of receipt of notice of Illinois EPA's determination, obtain and present to Illinois EPA for approval one of the other forms of financial assurance listed in Paragraph 94 of this Consent Decree. The Performing Settling Defendants inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Decree.

96. If Performing Settling Defendants can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 94 above after entry of this Consent Decree, Performing Settling Defendants may reduce the amount of the financial security provided under this Section to the estimated cost of the remaining work to be performed. Performing Settling Defendants shall submit a proposal for such reduction to Illinois EPA, in accordance with the requirements of this Section,

and may reduce the amount of the security upon approval by Illinois EPA. In the event of a dispute, Performing Settling Defendants may reduce the amount of the security in accordance with the final administrative or judicial decision resolving the dispute.

97. Performing Settling Defendants may change the form of financial assurance provided under this Section at any time, upon notice to and approval by Illinois EPA, provided that the new form of assurance meets the requirements of this Section. In the event of a dispute, Performing Settling Defendants may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

## XIV. COMPLETION REPORT AND CERTIFICATION OF COMPLETION

98. Completion of the Remedial Action.

a. Within ninety (90) days after Performing Settling Defendants conclude that the Remedial Action has been fully performed and the Performance Standards have been attained, Performing Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Performing Settling Defendants and Illinois EPA. If, after the pre-certification inspection, Performing Settling Defendants still believe that the Remedial Action has been fully performed and the Performance Standards have been attained, Performing Settling Defendants shall submit a RACR to Illinois EPA for approval with a request for a certification of completion of the Remedial Action, pursuant to Section XI (Illinois EPA Approval of Plans and Other Submissions)

within thirty (30) days of the inspection. The RACR shall contain a statement by a licensed professional engineer and the Performing Settling Defendants' Supervising Contractor that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The RACR shall demonstrate whether the Remedial Action was completed in accordance with this Consent Order and whether the Performance Standards have been attained. The report shall include, but not be limited to:

1) Executive summary. This chapter shall identify the overall Performance Standards of the remedial action and the technical approach utilized to meet those Performance Standards, including:

A) A brief description of the Site and adjacent affected properties, including a summary of the Site conditions, the contaminants of concern, the contaminated media, and the extent of contamination;

B) The major components of the Remedial Action Completion Report;

C) The scope of the problems corrected or mitigated by the proposed remedial action(s); and,

D) The anticipated post-remediation uses of the Site and areas immediately adjacent to the Site;

2) Field activities. This chapter shall provide a narrative description of the:

    A) Field activities conducted during the investigation;

    B) Remedial actions implemented at the Site and the performance of each remedial technology utilized; and

3) Special conditions. This chapter shall provide a description of any:

    A) Engineered barriers, if any, utilized in accordance with 35 Ill. Adm. Code 742 to achieve the approved remediation objectives;

    B) Institutional controls, if any, accompanying engineered barriers or industrial/commercial property uses in accordance with 35 Ill. Adm. Code 742, including a legible copy of any such controls, as appropriate;

    C) Post-remedial monitoring, if any, including:

        i) Conditions to be monitored;

        ii) Purpose;

        iii) Locations;

        iv) Frequency; and

D)   Other conditions, if any, necessary for protection of human health and the environment;

4)   Results.   This chapter shall analyze the effectiveness of the Remedial Actions by comparing the results of the confirmation sampling with the remediation objectives prescribed in the Agency-approved Remedial Action Plan.   The data and remedial objectives shall be presented in an appropriate format (e.g., tabular and graphical displays) such that all information is organized and presented logically and that relationships between the different investigations for each medium are apparent;

5)   Impractical Remediation Demonstration.   In the event that numerical performance standards and/or other remediation objectives cannot be achieved at any location, this chapter shall include a demonstration of Technical Impracticability and request for site specific remediation objectives with respect to such location(s), in accordance with the standards and procedures set forth at 35 Ill. Adm. Code 742.920.

6)   Conclusion.   This chapter shall identify the success of the Remedial Action in meeting the Performance Standards.   This chapter shall assess

the accuracy and completeness of the data in the report and, if applicable, future work;

7) Appendices. As built drawings signed and stamped by an LPE. References and data sources shall be incorporated into the appendices. Field logs, well logs and reports of laboratory analyses shall be organized and presented logically with reports of laboratory analyses of samples, including the following:

A) Accreditation status of the laboratory performing the quantitative analyses; and,

B) Certification by an authorized agent of the laboratory that all analyses have been performed in accordance with the requirements of 35 Ill. Adm. Code 186 and the scope of the accreditation.

If, after completion of the pre-certification inspection and receipt and review of the RACR, Illinois EPA determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree, including achieving the Performance Standards, Illinois EPA will notify Performing Settling Defendants in writing of the activities that must be undertaken by Performing Settling Defendants pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards. Provided, however, that Illinois EPA may only require Performing Settling

Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the RAP," as that term is defined in Paragraph 67.b. Performing Settling Defendants shall prepare a schedule for the review and approval of Illinois EPA for performance of such activities consistent with the Consent Decree, the RAP and the RAWP. Performing Settling Defendants shall perform all activities described in the notice from the Illinois EPA in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b. If Illinois EPA concludes, based on the RACR, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, Illinois EPA will so certify in writing to Performing Settling Defendants. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiff). Certification of Completion of the Remedial Action shall not affect Performing Settling Defendants obligations under this Consent Decree.

## XV. **EMERGENCY RESPONSE**

99. In the event of any action or occurrence during the performance of the Work which causes or threatens a release of

Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Performing Settling Defendants shall, subject to Paragraph 100, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the Illinois EPA's Project Coordinator. If he is not available, Performing Settling Defendants shall notify the Illinois EPA's Emergency Response Section at 217-782-3637. If Performing Settling Defendants are unable to reach the Illinois EPA's Emergency Response Section, then Performing Settling Defendants shall notify the Illinois Emergency Management Agency at 1-800-782-7860. Performing Settling Defendants shall take such actions in consultation with Illinois EPA's Project Manager or other available authorized Illinois EPA officer and in accordance with all applicable provisions of the Health and Safety Plans and any other applicable plans or documents developed pursuant to the RAP. In the event that Performing Settling Defendants fail to take appropriate Response action as required by this Section, and Illinois EPA takes such action instead, Performing Settling Defendants shall reimburse Illinois EPA for all costs of the Response action not inconsistent with the NCP pursuant to Section XVI (Reimbursement of Response Costs).

100. Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the State, a) to take all appropriate action to protect human health and the

environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXI (Covenants Not to Sue by Plaintiff).

### XVI. REIMBURSEMENT OF RESPONSE COSTS AND SETTLEMENT PAYMENTS BY PERFORMING, CASH-OUT AND COVENANT BENEFICIARY SETTLING DEFENDANTS

101. Past Response Costs.

a. As to the Illinois EPA. Within sixty (60) days after entry of this Consent Decree, Performing Settling Defendants shall pay the sum of Fifty-two Thousand and Seven Hundred and Twenty-six Dollars and 74/100 cents ($52,726.74) for unpaid Past Response Costs, not inconsistent with the NCP, incurred by the Illinois EPA as documented by a cost summary and associated documentation previously provided to Performing Settling Defendants by the Illinois EPA. Payment shall be made in the form of a certified or cashiers check or checks made payable to the "Illinois Environmental Protection Agency" designated for deposit in the "Hazardous Waste Fund". Performing Settling Defendants shall include the name, number of this case and the Illinois EPA No. LP52-183 on all checks. The check(s) shall be delivered to:

```
                    Illinois EPA
                    Fiscal Services Section
                    P.O. Box 19276
                    1021 North Grand Avenue East
                    Springfield, IL 62794-9276
```

Performing Settling Defendants shall simultaneously submit a copy of the transmittal letter and the check(s) to the Illinois Attorney General at:

```
                    Elizabeth Wallace
                    Supervising Attorney
                    Environmental Bureau
                    Illinois Attorney General's Office
                    69 West Washington Street, 18th Floor.
                    Chicago, IL   60602
```

      b.   <u>As to the Illinois Attorney General</u>.  Within sixty (60) days after entry of this Consent Decree, Performing Settling Defendants shall pay the sum of Six Thousand and Six Hundred and Seventy-two Dollars and 89/100 cents ($6,672.89) for unpaid Past Response Costs, not inconsistent with the NCP, incurred by the Illinois Attorney General as documented by a cost summary and associated documentation previously provided to Performing Settling Defendants.  Payment required by this Paragraph shall be by check made payable to the "Illinois Attorney General State Projects and Court Ordered Distribution Fund (801 Fund)."  The check(s) shall be delivered to:

```
                    Illinois Attorney General's Office
                    Chief, Environmental Bureau North
                    69 West Washington Street, 18th Floor.
                    Chicago, IL 60602
```

Performing Settling Defendants shall provide the case name and number on the check(s).

102. Future Response Costs.

a. **As to the Illinois EPA.** Performing Settling Defendants shall reimburse the Illinois EPA for all Future Response Costs incurred that are not inconsistent with the NCP. On a quarterly basis, the Illinois EPA shall send Performing Settling Defendants a bill requiring payment that includes a cost summary and associated documentation. Performing Settling Defendants shall remit payment within forty-five (45) days after receipt of such invoice, in the same manner as provided in 104a.

b. **As to the Illinois Attorney General.** Performing Settling Defendants shall reimburse the Illinois Attorney General for all Future Response Costs not inconsistent with the NCP. On a quarterly basis, the Illinois Attorney General shall send Performing Settling Defendants an invoice requiring payment that includes a cost summary and associated documentation. Performing Settling Defendants shall remit payment within forty-five (45) days after receipt of such invoice in the same manner as provided in Paragraph 101.b.

c. Invoices and payments for Future Response Costs are subject to the Dispute Resolution procedure set forth in Section XIX (Dispute Resolution) of this Consent Decree.

d. Failure by Illinois EPA or the Illinois Attorney General to submit an accounting of costs on a quarterly basis shall not preclude Illinois EPA or Illinois Attorney General's Office from

obtaining reimbursement of Future Response Costs from Performing Settling Defendants.

103. Performing Settling Defendants may contest payment of any Future Response Costs under Paragraph 102 if it determines that the Illinois EPA or Illinois Attorney General's Office has made an accounting error or that a cost item is inconsistent with the NCP. Such objection shall be made in writing within forty-five (45) days of receipt of the bill. Performing Settling Defendants shall send such objections pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, Performing Settling Defendants shall, within the forty-five (45) day period, pay all uncontested Future Response Costs to the Illinois EPA or Illinois Attorney General's Office in the manner described in Paragraph 102. Simultaneously, if requested by Illinois EPA, Performing Settling Defendants shall establish an escrow account in a federally-insured bank duly chartered in the State of Illinois and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. Performing Settling Defendants shall send to the State, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and, if applicable, a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the

escrow account is established as well as a bank statement showing the initial balance of the escrow account. In the event of an objection, Performing Settling Defendants shall, within the above-mentioned forty-five (45) day period, initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the State prevails in the dispute, within five (5) days of the resolution of the dispute, Performing Settling Defendants shall pay the sums due (with accrued interest at the rate established in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a)) to the State, in the manner described in Paragraph 102. If Performing Settling Defendants prevail concerning any aspect of the contested costs, Performing Settling Defendants shall pay that portion of the costs (plus associated accrued interest at the rate established in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a)) for which Performing Settling Defendants did not prevail to the State, in the manner described in this Paragraph 103; Performing Settling Defendants shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Performing Settling Defendants obligation to reimburse the State for its Future Response Costs.

104. In the event that the payment of Past Response Costs billed by the State are not made within sixty (60) days of the effective date of this Consent Decree as required by Paragraph 101

or the payments of Future Response Costs incurred by the Illinois EPA or Illinois Attorney General's Office are not made within forty-five (45) days of Performing Settling Defendants receipt of the bill as required by Paragraph 102, Performing Settling Defendants shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue sixty (60) days after the effective date of this Consent Decree. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of Performing Settling Defendants payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Performing Settling Defendants failure to make timely payments under this Section. Performing Settling Defendants shall make all payments required by this Paragraph in the manner described in Paragraphs 101 and 102.

105. Settlement Payments by Cash-Out and Covenant Beneficiary Settling Defendants.

a. Cash-out Settling Defendants. Within thirty (30) days of the entry of this Consent Decree, each Cash-out Settling Defendant listed in Appendix C shall pay Performing Settling Defendants its respective amount identified in Appendix C into the Acme Rockford Group Trust pursuant to the terms in the Acme Rockford Group Trust Agreement.

b. Covenant Beneficiary Settling Defendants. After the effective date of this Consent Decree, Performing Settling

Defendants may seek to add additional Settling Defendants, referred to herein as Covenant Beneficiary Settling Defendants, who desire to settle with Performing Settling Defendants to this Consent Decree by sending a written request to the State. The written request shall include a Covenant Beneficiary Form (Appendix G) fully executed by the proposed Covenant Beneficiary Settling Defendant, and the reasons that the proposed Covenant Beneficiary Settling Defendant should be added to the Consent Decree. Upon written approval by the State of the addition of each Covenant Beneficiary Settling Defendant, the respective fully-executed Covenant Beneficiary Form shall become part of this Consent Decree.

106. The payments made by each Cash-out and Covenant Beneficiary Settling Defendant under Paragraph 105 are intended to represent each respective Cash-out and Covenant Beneficiary Settling Defendant's equitable share of all costs incurred or to be incurred by any party related to environmental conditions at the Site, including cost overruns incurred during implementation of the remedy and costs for supplemental remedies or additional work to be performed in the event that the State determines the implemented remedy is not protective of human health or the environment. Such payments are neither penalties nor monetary sanctions.

107. The covenant not to sue contained in this Consent Decree is null and void, with respect to a Cash-out Settling Defendant, if information not currently known to Illinois EPA is discovered, and Illinois EPA determines that the new information indicates that the

Cash-out Settling Defendant contributed hazardous substances to the Site in such greater amount or of such greater toxic or other hazardous effect that the Cash-out Settling Defendant no longer qualifies as a Cash-out Settling Defendant.

## XVII. INDEMNIFICATION AND INSURANCE

108. a.   The State does not assume any liability by entering into this agreement or by virtue of any designation of Performing Settling Defendants as Illinois EPA's authorized representatives under Section 104(e) of CERCLA.   Performing Settling Defendants shall indemnify, save and hold harmless the State and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Performing Settling Defendants, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Performing Settling Defendants as Illinois EPA's authorized representatives under Section 104(e) of CERCLA.   Further, Performing Settling Defendants agree to pay the State all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the State based on negligent or other wrongful acts or omissions of Performing Settling Defendants, its officers, directors, employees, agents, contractors,

subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree. The State shall not be held out as a party to any contract entered into by or on behalf of Performing Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither the Performing Settling Defendants nor any such contractor shall be considered an agent of the State.

b. The State shall give Performing Settling Defendants notice of any claim for which the State plans to seek indemnification pursuant to Paragraph 108.a., and shall consult with Performing Settling Defendants prior to settling such claim.

109. Performing Settling Defendants waives all claims against the State for damages or reimbursement or for set-off of any payments made or to be made to the State, arising from or on account of any contract, agreement, or arrangement between Performing Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Performing Settling Defendants shall indemnify and hold harmless the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Performing Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

110. No later than fifteen (15) days before commencing any on-site Work, Performing Settling Defendants shall secure, and shall maintain until the first anniversary of Illinois EPA's Certification of Completion of the Remedial Action pursuant to Paragraph 98.b. of Section XIV (Completion Reports and Certifications of Completion) commercial comprehensive general liability insurance with limits of $2 million dollars, naming the State as an additional insured. In addition, for the duration of this Consent Decree, Performing Settling Defendants shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Performing Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Performing Settling Defendants shall provide to Illinois EPA certificates of such insurance and a copy of each insurance policy. Performing Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the effective date of this Consent Decree. If Performing Settling Defendants demonstrates by evidence satisfactory to Illinois EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Performing Settling Defendants only needs to provide

that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII. **FORCE MAJEURE**

111. For the purposes of this Consent Decree, force majeure is an event arising solely beyond the control of the Performing Settling Defendants, which prevents the timely or complete performance of any of the requirements of this Consent Decree. For purposes of this Consent Decree, force majeure shall include, but is not limited to, events such as floods, fires, tornadoes, other natural disasters, acts of God, acts of terrorism, and labor disputes beyond the reasonable control of the Performing Settling Defendants, or prohibitions imposed by any court having jurisdiction over Performing Settling Defendants or the affected property.

When, in the opinion of the Performing Settling Defendants, a force majeure event occurs which causes or may cause a delay in the performance of any of the requirements of this Consent Decree, the Performing Settling Defendants shall orally notify the Plaintiff within forty-eight (48) hours of when the Performing Settling Defendants knew or should have known about the occurrence. Written notice shall be given to the Plaintiff as soon as practicable, but no later than ten (10) calendar days after the claimed occurrence.

Failure by the Performing Settling Defendants to comply with the notice requirements of the preceding Paragraph shall render this Section voidable by the Plaintiff as to the specific event for which the Performing Settling Defendants have failed to comply with the

notice requirement. If voided, this section shall be of no effect as to the particular event involved.

Within ten (10) calendar days of receipt of the written force majeure notice required under Paragraph 111, the Plaintiff shall respond to the Performing Settling Defendants in writing regarding the Performing Settling Defendants' claim of a delay or impediment to performance. If the Plaintiff agrees that the delay or impediment to performance has been or will be caused by circumstances beyond the control of the Performing Settling Defendants, including any entity controlled by the Performing Settling Defendants, and that the Performing Settling Defendants could not have prevented the delay by the exercise of due diligence, the parties shall stipulate to an extension of the required deadline(s) for all requirement(s) affected by the delay, by a period not to exceed the delay actually caused by such circumstances. Such stipulation may be filed as a modification to this Consent Decree pursuant to the modification procedures established in this Consent Decree. The Performing Settling Defendants shall not be liable for stipulated penalties for the period of any such stipulated extension.

If the Plaintiff does not accept the Performing Settling Defendants' claim of a force majeure event, the Performing Settling Defendants may submit the matter to Dispute Resolution as set forth at Section XIX of this Consent Decree.

An increase in costs associated with implementing any requirement of this Consent Decree shall not, by itself, excuse the Performing Settling Defendants under the provisions of this Section of this Consent Decree from a failure to comply with such a requirement.

## XIX. DISPUTE RESOLUTION

112. Unless otherwise provided for in this Consent Decree, the dispute resolution procedures provided by this section shall be the only process available to resolve all disputes arising under this Consent Decree, including but not limited to the Illinois EPA's approval, comment on, or denial of the RAWP, any report, *force majeure* pursuant to Section XVIII, or the State's decision regarding appropriate or necessary response activity.

The following are expressly not subject to the dispute resolution procedures provided by this section: disputes regarding an emergency response under Section XV, or disputes relating to the Authority to Halt Work provision of Section XII.

The dispute resolution procedure shall be invoked upon the written notice by either the Plaintiff or Performing Settling Defendants to the other describing the nature of the dispute and the initiating party's position with regard to such dispute. The party receiving such notice shall acknowledge receipt of the notice; thereafter the Plaintiff and the Performing Settling Defendants shall schedule and hold a meeting to discuss the dispute informally not later than fourteen (14) days from the receipt of such notice.

The period of informal negotiations shall be for a period of thirty (30) calendar days from the date of the first meeting between representatives of the Plaintiff and the Performing Settling Defendants, unless the Plaintiff and the Performing Settling Defendants' representatives agree, in writing, to shorten or extend this period.

In the event that the Plaintiff and the Performing Settling Defendants are unable to reach agreement during the informal negotiation period, the Plaintiff shall provide the Performing Settling Defendants with a written summary of its position regarding the dispute. The position advanced by the Plaintiff shall be considered binding unless, within twenty (20) calendar days of the Performing Settling Defendants' receipt of the written summary of the Plaintiff's position, the Performing Settling Defendants file a petition with this Court seeking judicial resolution of the dispute. The Plaintiff shall respond to the petition by filing the administrative record of the dispute and any argument responsive to the petition within twenty (20) calendar days of service of Performing Settling Defendants' petition. The administrative record of the dispute shall include the written notice of the dispute, any responsive submittals, the Plaintiff's written summary of its position, the Performing Settling Defendants' petition before the Court and the Plaintiff's response to the petition.

The invocation of dispute resolution, in and of itself, shall not excuse compliance with any requirement, obligation or deadline

contained herein, and stipulated penalties may be assessed for failure or noncompliance during the period of dispute resolution.

This Court shall make its decision based on the administrative record, and any additional evidence permitted by the Court, and shall not draw any inferences nor establish any presumptions adverse to either Plaintiff or the Performing Settling Defendants as a result of invocation of this section or the inability to reach agreement with respect to the disputed issue.

As part of the resolution of any dispute, the Plaintiff and the Performing Settling Defendants, by agreement, or by order of this Court, may, in appropriate circumstances, extend or modify the schedule for completion of work under this Consent Decree to account for the delay in the work that occurred as a result of dispute resolution.

## XX. STIPULATED PENALTIES

113. Performing Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraph 114 to the Illinois EPA for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Performing Settling Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the RAP, and the RAWP and within the specified time schedules established by and approved under this

Consent Decree. Stipulated penalties shall not apply in the event of purported failure to pay Past or Future Response Costs under Section XVI so long as the Performing Settling Defendants follow the procedures for contesting State costs set forth in Section XVI (Reimbursement of Response Costs).

114. The following stipulated penalties shall accrue per violation per day for any noncompliance with any provision or requirement of this Consent Decree, the RAP, the RAWP and any plans or other documents approved by Illinois EPA pursuant to this Consent Decree.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| Days 1 through 14 | $250.00 per violation |
| Days 15 through 29 | $500.00 per violation |
| Days 30 and beyond | $1000.00 per violation |

115. In the event that Illinois EPA assumes performance of a portion or all of the Work pursuant to Paragraph 129 of Section XXI (Covenants Not to Sue by Plaintiff), Performing Settling Defendants shall be liable for a stipulated penalty in the amount of $150,000.00.

116. All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section XI (Illinois EPA Approval of Plans and

Other Submissions), during the period, if any, beginning on the 31st day after Illinois EPA's receipt of such submission until the date that Illinois EPA notifies Performing Settling Defendants of any deficiency; or (2) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

117. Following Illinois EPA's determination that Performing Settling Defendants have failed to comply with a requirement of this Consent Decree, Illinois EPA may give Performing Settling Defendants written notification of the same and describe the noncompliance. Illinois EPA may send Performing Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether Illinois EPA has notified Performing Settling Defendants of a violation.

118. All penalties accruing under this Section shall be due and payable to the Illinois EPA within forty-five (45) days of Performing Settling Defendants receipt from Illinois EPA of a demand for payment of the penalties, unless Performing Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution). All payments to the Illinois EPA under this Section

shall be paid by certified check(s) made payable to "Illinois Environmental Protection Agency" for deposit in the "Environmental Protection Trust Fund". Performing Settling Defendants should mail all payments to:

> Manager, Fiscal Services
> Illinois Environmental Protection Agency
> 1021 North Grand Avenue East
> P.O. Box 19276
> Springfield, Illinois 62794-9276

Performing Settling Defendants shall provide the case name and number on the face of the check. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the Illinois Attorney General as provided in Section XXVI (Notices and Submissions).

119. The payment of penalties shall not alter in any way Performing Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

120. Penalties shall continue to accrue as provided in Paragraph 116 during any dispute resolution period, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of Illinois EPA that is not appealed to this Court, accrued penalties determined shall be paid to Illinois EPA within thirty (30) days of the agreement;

b. If the dispute is appealed to this Court and the State prevails in whole or in part, Performing Settling Defendants

67

shall pay all accrued penalties determined by the Court to be owed to Illinois EPA within sixty (60) days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

c. If the District Court's decision is appealed by Performing Settling Defendants or the Plaintiff, Performing Settling Defendants shall pay all accrued penalties determined by the District Court to be owing to the State into an escrow account within sixty (60) days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every sixty (60) days. Within fifteen (15) days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to Illinois EPA or to Performing Settling Defendants to the extent that Performing Settling Defendants prevail, as required by the District Court's Order.

121. a. If Performing Settling Defendants fail to pay stipulated penalties when due, Plaintiff may institute proceedings to collect the penalties, as well as interest. Performing Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 118, at the rate established in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

b. Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the State to seek from Performing Settling Defendants any other remedies

or sanctions available by virtue of Performing Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based.

122. Notwithstanding any other provision of this Section, the Plaintiff may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI. COVENANTS NOT TO SUE BY PLAINTIFF

123. Covenants Not to Sue Owner and Performing Settling Defendants.

a. Performing Settling Defendants. In consideration of the actions that will be performed and the payments that will be made by Performing Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 124, 125, and 127 of this Section, the State covenants not to sue or to take administrative action against Performing Settling Defendants pursuant to Section 107(a) of CERCLA for performance of the Work and the recovery of Past Response Costs and Future Response Costs, relating to the Site and any other areas addressed in the RAP, the RAWP and this Consent Decree. Except with respect to future liability for Performing Settling Defendants, these covenants not to sue shall take effect upon the receipt by Illinois EPA and the Illinois Attorney General of the payments required by Section XVI (Reimbursement of Response Costs and Settlement Payments by Performing, Cash-Out and Covenant Beneficiary Settling Defendants).

With respect to future liability for Performing Settling Defendants, these covenants not to sue shall take effect upon Certification of Completion of the Work by Illinois EPA pursuant to Paragraph 98.b of Section XIV (Completion Reports and Certifications of Completion). These covenants not to sue are conditioned upon the satisfactory performance by Performing Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to Performing Settling Defendants and do not extend to any other person.

b. Owner Settling Defendants. In consideration of the actions that will be performed by Owner Settling Defendants under the terms of the Consent Decree as further described herein, the State covenants not to sue or to take administrative action against Owner Settling Defendants pursuant to Section 107(a) of CERCLA for performance of the Work and the recovery of Past Response Costs and Future Response Costs, relating to the Site and any other areas addressed in the RAP, the RAWP and this Consent Decree. These covenants not to sue are contingent upon Owner Settling Defendants' compliance with the access and environmental land use control requirements set forth in Section IX. These covenants not to sue extend only to Owner Settling Defendants and do not extend to any other person.

124. State's Pre-certification reservations. With respect to Performing Settling Defendants, notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree

is without prejudice to, the State's right to institute proceedings in this action or in a new action, or to take action seeking to compel Performing Settling Defendants (1) to perform further Response actions relating to the Site or (2) to reimburse the State for additional costs of response if, prior to Certification of Completion of the Remedial Action:

> (i) conditions at the Site, previously unknown to
> Illinois EPA, are discovered, or

> (ii) information, previously unknown to Illinois EPA,
> is received, in whole or in part,

and these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

125. State's Post-certification reservations. With respect to Performing Settling Defendants, notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to take action seeking to compel Performing Settling Defendants (1) to perform further Response actions relating to the Site or (2) to reimburse the State for additional costs of Response if, subsequent to Certification of Completion of the Remedial Action:

> (i) conditions at the Site, previously unknown to
> Illinois EPA, are discovered, or

(ii) information, previously unknown to Illinois EPA, is received, in whole or in part, and these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

126. For purposes of Paragraph 124, the information and the conditions known to Illinois EPA shall include only that information and those conditions known to Illinois EPA as of the date the RAP was approved and documents making up the administrative record supporting the Remedial Action Plan. For purposes of Paragraph 125, the information and the conditions known to Illinois EPA shall include only that information and those conditions known to Illinois EPA as of the date of Certification of Completion of the Remedial Action, the documents making up the administrative record supporting the Remedial Action Plan, the post-Remedial Action administrative record, or any information received by Illinois EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

127. General reservations of rights by State as to Owner and Performing Settling Defendants. The covenants not to sue set forth above do not pertain to any matters other than those expressly specified in Paragraph 123. The State reserves, and this Consent Decree is without prejudice to, all rights against Owner and

Performing Settling Defendants with respect to all other matters, including but not limited to, the following:

a.    claims based on a failure by Owner or Performing Settling Defendants to meet a requirement of this Consent Decree;

b.    liability arising from the past, present, or future disposal, release, or threat of release of Waste Materials outside of the Site and other areas addressed in the RAP, the RAWP and this Consent Decree;

c.    liability for future disposal of Waste Material at the Site, other than as provided in the RAP, the RAWP, or otherwise ordered by Illinois EPA;

d.    liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e.    criminal liability;

f.    liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

g.    liability, prior to Certification of Completion of the Remedial Action, for additional Response actions (pursuant to Paragraphs 70 and 72 (Illinois EPA Selection of Further Response Actions and Performing Settling Defendants' Obligation to Perform Further Response Actions)) that Illinois EPA determines are necessary to achieve Performance Standards, but that cannot be

required pursuant to Paragraph 67 (Modification of the RAWP or other required plans).

Except as provided in Paragraph 136, Owner and Performing Settling Defendants reserve all rights, defenses, and objections to the matters contained in Subparagraphs a. through g. above.

128. Covenants Not to Sue Cash-Out and Covenant Beneficiary Settling Defendants.

a.    Except for those claims reserved in Subparagraph b. below, the State releases and covenants not to sue or to take any other civil or administrative action against Cash-out Settling Defendants and Covenant Beneficiary Settling Defendants, pursuant to Section 107 of CERCLA relating to the Site.  These covenants not to sue shall take effect with respect to any individual Cash-out Settling Defendant upon the payment to the Acme Rockford Group Trust pursuant to Paragraph 105.a and Appendix F, by that Cash-out Settling Defendant, or if payment is made into the Acme Rockford Group Trust prior to the effective date of this Consent Decree, than upon the effective date of this Consent Decree.  These covenants not to sue shall take effect with respect to any individual Covenant Beneficiary Settling Defendant upon written approval from the State of its addition to this Consent Decree, pursuant to Paragraph 105.b. These covenants not to sue extend only to Cash-out Settling Defendants and Covenant Beneficiary Settling Defendants and do not extend to any other person.

b. <u>Reservation of Rights</u>. Notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, all rights against each Cash-out Settling Defendant and Covenant Beneficiary Settling Defendant with respect to all other matters, including but not limited to, the following:

i. failure by a Cash-out Settling Defendant and Covenant Beneficiary Settling Defendant to make timely payments to Performing Settling Defendants as required in Paragraph 105 of this Consent Decree;

ii. liability arising from the past, present, or future disposal, release, or threat of release of Waste Materials by a Cash-out or Covenant Beneficiary Settling Defendant at any location that is outside of the Site and other areas addressed in the RAP, the RAWP and this Consent Decree;

iii. liability for future disposal of Waste Material at the Site and other areas addressed in the RAP, the RAWP and this Consent Decree by a Cash-out or Covenant Beneficiary Settling Defendant;

iv. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

v. criminal liability; and

vi. liability for violations of federal or state law which occur during or after implementation of the Remedial Action.

c. Except as provided in Paragraph 136, Cash-out Settling Defendants and Covenant Beneficiary Settling Defendants reserve all rights, defenses, and objections to the matters contained in Subparagraphs (i) through (vi) above.

129. Work Takeover. In the event Illinois EPA determines that Performing Settling Defendants have ceased implementation of any portion of the Work, is seriously or repeatedly deficient or late in their performance of the Work, or is implementing the Work in a manner which may cause an endangerment to human health or the environment, Illinois EPA may assume the performance of all or any portions of the Work as Illinois EPA determines necessary. Performing Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute Illinois EPA's determination that takeover of the Work is warranted under this Paragraph. Costs incurred by the Illinois EPA in performing the Work pursuant to this Paragraph shall be considered Future Response Costs that Performing Settling Defendants shall pay pursuant to Section XVI (Reimbursement of Response Costs).

130. Notwithstanding any other provision of this Consent Decree, the State retains all authority and reserves all rights to take any and all Response actions authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANTS

131. Covenant Not to Sue the State. Subject to the reservations in Paragraph 132, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action

against the State with respect to the Site and Past and Future Response Costs as defined herein or this Consent Decree, including, but not limited to:

a.    any direct or indirect claim for reimbursement from any State Fund or any other provision of law;

b.    any claims against the State, including any department, agency or instrumentality of the State under CERCLA Sections 107 or 113 related to the Site; or

c.    any claims arising out of Response activities at the Site, including claims based on Illinois EPA's selection of Response actions, oversight of response activities or approval of plans for such activities.

132. The Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the State, based on negligent action taken directly by the State (not including oversight or approval of Performing Settling Defendants' plans or activities). Such reservation applies only to claims pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

133. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

134. Covenants Between Settling Defendants.

a.    Owner Settling Defendants, Performing Settling Defendants, Cash-out Settling Defendants and Covenant Beneficiary

Settling Defendants hereby release and covenant not to sue and agree not to assert any claims or causes of action against each other with respect to the Site or this Consent Decree, including, but not limited to, any direct or indirect claim for reimbursement or indemnification through CERCLA Sections 107 and 113 or any other provision of law, or any claims arising out of response activities at the Site. The Settling Defendants reserve, and this Consent Decree is without prejudice to, any claims, actions or defenses against parties who have failed to comply with their obligations under this Consent Decree or with their obligations in any settlement agreement entered into between the Settling Defendants to resolve the matters addressed in this Consent Decree.

b. Notwithstanding any provision to the contrary contained herein, any Settling Defendant that becomes the recipient of administrative orders, demands, other claims or legal actions by U.S. EPA or other agency of the United States related to the Site reserves, and this Consent Decree is without prejudice to, any and all rights to assert a claim and/or maintain an action, including, but not limited to, an action for cost recovery pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, or contribution pursuant to Section 113 of CERCLA, 42 U.S.C. 9613, that such Settling Defendant may have against any other Settling Defendant that also becomes the recipient of such or a similar order, demand, claim or action. Further, any Settling Defendant against which a claim has been asserted or an action has been maintained by another Settling Defendant pursuant to

the provisions of the preceding sentence shall have the right to assert any and all defenses to such claim or action other than the defense that this Consent Decree bars or precludes a contribution claim by reason of 42 U.S.C. 9613(f)(2).

## XXIII. **EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION**

135. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. The Plaintiff and the Settling Defendants expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a party hereto, including, but not limited to, claims for cost recovery under Section 107(a) of CERCLA and/or contribution under Section 113(f) of CERCLA, 42 U.S.C. § 9607(a) and § 9613(f).

136. The Plaintiff and the Settling Defendants agree, and by entering this Consent Decree or by signing a Covenant Beneficiary Form, this Court finds, that the Settling Defendants are entitled, as of the effective date of this Consent Decree or the effective date of a Covenant Beneficiary Form, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree. The

"matters addressed" in this Consent Decree are all Response actions taken or to be taken by Owner and Performing Settling Defendants and all Response costs incurred or to be incurred by the State or any other person with respect to the Site. Matters addressed in this Consent Decree do not include those Response costs or Response actions as to which the State has reserved its rights under this Consent Decree (except for claims for failure to comply with this Consent Decree), in the event the State asserts rights against Settling Defendants coming within the scope of such reservations.

137. The Performing and Owner Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the State in writing no later than sixty (60) days prior to the initiation of such suit or claim.

138. The Performing and Owner Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in writing the State within ten (10) days of service of the complaint on them. In addition, Performing and Owner Settling Defendants shall notify the State within ten (10) days of service or receipt of any Motion for Summary Judgment and within ten (10) days of receipt of any order from a court setting a case for trial.

139. In any subsequent administrative or judicial proceeding initiated by the State for injunctive relief, recovery of Response costs, or other appropriate relief relating to the Site, Settling

Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

## XXIV.    ACCESS TO INFORMATION

140. Performing Settling Defendants shall provide to Illinois EPA, upon request, copies of all documents and information within its possession or control or that of its contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Performing Settling Defendants shall also make available to Illinois EPA, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

141. a.    Performing Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with 2 Ill. Adm. Code 1828.

Public records determined to be confidential under 2 Ill. Adm. Code 1828 will be afforded the protection specified therein. If the requirements in 2 Ill. Adm. Code 1828.401 have not been met when the public records are submitted to the Illinois EPA, or Illinois EPA has notified the Performing Settling Defendants that the public records are not confidential under 2 Ill. Adm. Code 1828.402 and 1828.403, the public may be given access to such public records, subject to appeal rights found in 2 Ill. Adm. Code 1828.405.

b. The Performing Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by state or federal law. If the Performing Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Illinois EPA with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by Performing Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

142. No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical,

monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV. RETENTION OF RECORDS

143. Until ten (10) years after the Performing Settling Defendants' receipt of Illinois EPA's notification pursuant to Paragraph 98.b. of Section XIV (Certification of Completion of the Remedial Action), Performing Settling Defendants shall preserve and retain all records and documents now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work or liability of any person for Response actions conducted and to be conducted at the Site, regardless of any corporate retention policy to the contrary. Until ten (10) years after Performing Settling Defendants' receipt of Illinois EPA's notification pursuant to Paragraph 98.b. of Section XIV (Certification of Completion of the Remedial Action), Performing Settling Defendants shall also instruct its contractors and agents to preserve all documents, records, and information of whatever kind, nature or description relating to the performance of the Work.

144. At the conclusion of this document retention period, Performing Settling Defendants shall notify the Illinois EPA at least ninety (90) days prior to the destruction of any such records or documents, and, upon request by the Illinois EPA, Performing Settling Defendants shall deliver any such records or documents to Illinois EPA. Performing Settling Defendants may assert that

certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Performing Settling Defendants assert such a privilege, it shall provide the Plaintiff with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Performing Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

145. Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information relating to its potential liability regarding the Site since notification of potential liability by the State of Illinois or the filing of suit against it regarding the Site or requests for information from the State.

## XXVI. NOTICES AND SUBMISSIONS

146. Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one signatory to this Consent Decree to

another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other signatories in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree. Notice needs to be given to the Owner Settling Defendants only of the following:

a. Certification of Completion of the Work pursuant to Section XIV (Completion Reports and Certification of Completion); and

b. Selection of further Response actions pursuant to Paragraph 70.

Notice need not be given to Cash-out and Covenant Beneficiary Settling Defendants unless their respective interests are specifically implicated. In such case, notice shall be sent to the interested parties by the Performing Settling Defendants.


As to the Illinois EPA:

Andrew Frierdich
Project Manager
State Sites Unit
Illinois Environmental
    Protection Agency
1021 North Grand Avenue East
P.O. Box 19276
Springfield, Illinois 62794-9276
Phone:    (217) 785-8724
Fax:      (217) 782-3258
Email:  Andrew.frierdich@illinois.gov

Paul Jagiello
Division of Legal Counsel
Illinois Environmental
    Protection Agency
9511 West Harrison Street
Des Plaines, Illinois 60016
Phone:     (847)294-4076
Fax:       (847)294-4083
Email:     paul.jagiello@illinois.gov

As to the Plaintiff:

Elizabeth Wallace
Supervising Attorney
Environmental Bureau
Illinois Attorney General's Office
69 West Washington Street, 18th Floor
Chicago, Illinois 60602
Phone:     (312)814-5396
Fax:       (312)814-2347
Email:     ewallace@atg.state.il.us

As to Performing Settling Defendants:

Gary Letcher
Law Office of Gary R. Letcher, PC
P.O. Box 460
Ashton, MD    28061
Phone:     (301)570-4907
Fax:       (301)651-8896
Email:     g.letcher@letcherlaw.com

As to Owner Settling Defendants:

Bart and Karen Anderson
33 Briar Lane
Rockford, IL    61103

Mr. Dennis Vance
2933 Potter Street
Rockford, IL    61109

Leombruni Masonry, Inc.
6628 Rolling Hedge Lane
Rockford, IL    61108

## XXVII. **EFFECTIVE DATE**

147. The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVIII. **RETENTION OF JURISDICTION**

148. This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling the Plaintiff or the Settling Defendants to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX. **APPENDICES**

149. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the list of Owner Settling Defendants.

"Appendix B" is the list of Performing Settling Defendants.

"Appendix C" is the list of Cash-Out Settling Defendants.

"Appendix D" is the RAP.

"Appendix E" is the legal description and map of the Site.

"Appendix F" is the Acme Rockford Group Trust Agreement.

"Appendix G" is the Covenant Beneficiary Form.

"Appendix H" is the Notice for recording.

"Appendix I" is the Access Agreement.

"Appendix J" is the form ELUC.

## XXX. ADMINISTRATIVE RECORD AND COMMUNITY RIGHT TO KNOW

150. Performing Settling Defendants shall set up a repository at the Rockford Public Library for the maintenance of an Administrative Record and shall deposit the following final documents in the repository within sixty (60) days of the document becoming final or within sixty (60) days of entry of this Consent Decree, as applicable:

     a.   The Second Amended Complaint and any amendments thereto filed in this action.

     b.   This Consent Decree including its attachments.

     c.   Any final document required to be submitted to the Illinois EPA under this Consent Decree.

     d.   All sampling data.

As requested by Illinois EPA, Performing Settling Defendants shall participate in the preparation of any information for dissemination to the public and in public meetings which may be held or sponsored by Illinois EPA to explain activities at or relating to the Site.

151. Performing Settling Defendants shall comply with the Community Right to Know provision of the Act, found at 415 ILCS 5/25d *et seq.*

### XXXI. **MODIFICATION**

152. Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of Illinois EPA and Performing Settling Defendants. Except as provided in Paragraph 153, any other provision in this Consent Decree may be modified by agreement of Illinois EPA, the Illinois Attorney General and the Performing Settling Defendants. All such modifications shall be made in writing.

153. Except as provided in Paragraph 67 ("Modification of the RAP or Related Work Plans"), no material modifications shall be made to the RAP or RAWP without written notification to and written approval of the Plaintiff and written notice to the Court. Modifications to the RAP and/or the RAWP that do not materially alter that document may be made by written agreement between Illinois EPA and Performing Settling Defendants.

154. Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

### XXXII. **TERMINATION**

155. Performing Settling Defendants may request that this Consent Decree terminate no sooner than twelve (12) months after Performing Settling Defendants have completed all actions required

of Performing Settling Defendants in the Consent Decree, provided that Performing Settling Defendants have been in continuous compliance with the terms of the Consent Decree for the twelve (12) months preceding the request. Such a request may be made by notice to Plaintiff and the Illinois EPA in accordance with Section XXVI of this Consent Decree. The request shall include a statement that Performing Settling Defendants have completed all actions required by this Consent Decree, that Performing Settling Defendants have been in continuous compliance with the terms of the Consent Decree for the twelve (12) months preceding the request and a certification by a responsible corporate official of one of the Performing Settling Defendants who shall state:

> I certify under penalty of law that this document was prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted based on my inquiry of those persons directly responsible for gathering the information, and that the information submitted in or accompanying this notification of final compliance is to the best of my knowledge true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and or imprisonment for knowing violations.

156. The Plaintiff shall notify Performing Settling Defendants of its decision on the request within forty-five (45) days of Plaintiff's receipt of the request. If the Plaintiff and the Illinois EPA agree to terminate this Consent Decree, the Plaintiff and Defendants shall jointly file a notice with the Court that the Consent Decree is terminated. If the Plaintiff and the Illinois EPA

do not agree to terminate this Consent Decree, the Plaintiff shall provide Performing Settling Defendants written notification stating the reasons why this Consent Decree should not be terminated. Upon receipt of such notification, any party to this Consent Decree may initiate the Dispute Resolution as provided in Section XIX of this Consent Decree. The Consent Decree shall remain in effect pending resolution of any dispute by the parties to this Consent Decree or the Court concerning whether Performing Settling Defendants have completed their obligations under this Consent Decree and are in compliance with the terms of the Consent Decree.

157. The provisions of Section IX (Access and Institutional Controls), Section XXI (Covenants Not to Sue by Plaintiff), Section XXII (Covenants by Settling Defendants), Section XXIII (Effect of Settlement; Contribution Protection), Section XXV (Retention of Records), Section XXVI (Notices and Submissions), Section XXVIII (Retention of Jurisdiction), and Section XXXI (Modification) shall survive and shall not be subject to and are not affected by the termination of any other provision(s) of this Consent Decree.

### XXXIII. <u>LODGING AND OPPORTUNITY FOR PUBLIC COMMENT</u>

158. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment. The Plaintiff reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Owner, Performing and Cash-

out Settling Defendants consent to the entry of this Consent Decree without further notice.

159. If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of the Plaintiff or any Owner, Performing or Cash-out Settling Defendant and the terms of the agreement may not be used as evidence in any litigation between those entities.

### XXXIV. SIGNATORIES/SERVICE

160. The undersigned representative for each of the Plaintiff, Illinois EPA, and Settling Defendants certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

161. Each Settling Defendant that is not named as a defendant in this action hereby consents to its joinder as a party defendant for purposes of this Consent Decree without further specific pleading or motion by Plaintiff or any other Settling Defendant.

162. Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the Plaintiff has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

163. Each Owner, Performing and Cash-Out Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service

of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

SO ORDERED THIS _____ DAY OF _____, 2009.

_____
United States District Judge

THE UNDERSIGNED enter into this Consent Decree in the matter of People of the State of Illinois v. Akzo Nobel Coatings, Inc., *et al.*, relating to the Acme Solvents Reclaiming Site in Rockford, Illinois.

PEOPLE OF THE
STATE OF ILLINOIS

*ex rel.* Lisa Madigan
Attorney General of
State of Illinois

Matthew J. Dunn, Chief
Environmental Enforcement/
Asbestos Litigation Division

Date: 11/7/08

By: _RoseMarie Cazeau_
RoseMarie Cazeau, Chief
Assistant Attorney General
Environmental Bureau

ILLINOIS ENVIRONMENTAL
PROTECTION AGENCY

Date: 11/6/08

By: _Robert A. Messina_
Robert A. Messina
Chief Legal Counsel

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of People of the State of Illinois v. Akzo Nobel Coatings, Inc., *et al.*, Case No.  3:06-cv-50115, relating to the Acme Solvents Site.


Name of Settling Defendant: _____

As successor to (if applicable):_____

Designate participation as a:

_____        Owner Settling Defendant

_____        Performing Settling Defendant

_____        Cash-Out Settling Defendant


By:_____
        (signature)

Printed:_____

Title:_____

Company:_____


Agent Authorized to Accept Service:

Name:_____

Title:_____

Company:_____

Address:_____

_____

Telephone Number:_____        Fax No.:_____

E-mail:_____

## APPENDIX A

## OWNER SETTLING DEFENDANTS

# APPENDIX A

## OWNER SETTLING DEFENDANTS

**Leombruni Masonry, Inc.**
Mr. Jason Rock
Barrick Switzer et al.
6833 Stalter Dr. 1st fl
Rockford, IL 61108
815-962-6611

**Anderson, Bart and Karen**
33 Briar Lane
Rockford, IL 61103

**Vance, Dennis**
3004 Cannon St.
Rockford, IL 61109

**APPENDIX B**


**PERFORMING SETTLING DEFENDANTS**

# APPENDIX B

## PERFORMING SETTLING DEFENDANTS

Akzo Nobel Coatings Inc. (successor to Reliance Universal, Inc.)
Coatings and Chemicals Corp.
Crawford Laboratories, Inc.
The Glidden Company
Hentzen Coatings, Inc.
Honeywell International Inc. (successor to Allied-Signal, Inc.)
Life Technologies Corporation (formerly Invitrogen Corporation), successor in interest to
     Dexter Corporation
Matthews Paint Company
Reynolds Metals Company
Seymour of Sycamore, Inc.
Sheboygan Paint Company, Inc.
The Sherwin Williams Company (successor to Duplicolor Products Co.)
Testor Corporation
The Valspar Corporation

# APPENDIX C

# CASH-OUT SETTLING DEFENDANTS

# APPENDIX C

## CASH-OUT SETTLING DEFENDANTS

| Party at time of disposal | Signatory / alleged successor |
|---|---|
| Abbott Laboratories | Abbott Laboratories |
| Acme Finishing Co., Inc. | Acme Finishing Co., Inc. |
| Alcan Aluminum | Alcan Primary Products Corporation |
| All Rental Garment Co. of Rockford, Inc. | All Rental Garment Co. of Rockford, Inc. |
| Alumax Mill Products, Inc. | Alumax Mill Products, Inc. |
| AMCO Engineering Co. | IMS Engineered Products, LLC |
| Amerock Corp. | Newell Rubbermaid Inc. |
| ARATEX Services, Inc. | Aramark Uniform and Career Apparel, LLC |
| Arrow Plastic Mfg. Co. | Arrow Plastic Mfg. Co. |
| Atwood Enterprises, Inc. | Atwood Enterprises, Inc. |
| Bell & Howell Company | Voyager Learning Company |
| Bergstrom Manufacturing Co. | Bergstrom, Inc. |
| Berol Corp. | Newell Rubbermaid Inc. |
| Big Beam Emergency Services | Teledyne Big Beam |
| Camcar Div. of Textron | Textron, Inc. |
| Central Can Company, Inc. | Central Can Company, Inc. |
| Commerce Industrial Chemicals, Inc. | Commerce Industrial Chemicals, Inc |
| Continental Can Company | Crown Beverage Packaging, Inc. |
| Custom-Pak Products, Inc. | Custom-Pak Products, Inc. |
| Dietzgen Corp. | Dietzgen Corp. |
| DelMonte Corporation | DelMonte Corporation |
| Earl Scheib of Illinois, Inc. | Earl Scheib of Illinois, Inc |
| Ekco Products | Pactive Corporation |
| E.I. duPont de Nemours & Co. | E.I. duPont de Nemours & Co. |
| Ello Furniture Mfg. Co. | Ello Furniture Mfg. Co. |
| EMCO Chemical Distributors, Inc. | EMCO Chemical Distributors, Inc. |
| Enamelers & Japaners | Enamelers & Japaners |
| Erie Controls Division | TAC, LLC |
| General Power Company | True Value Company |
| Fairbanks Morse Engine | Coltec Industries, Inc. |
| Field Container | Graphic Packaging International, Inc. |
| Finishing Services by Keith | Keith Contract Refurbishers, Ltd. |
| Finishes Unlimited, Inc. | Finishes Unlimited, Inc. |
| Freeman Chemical Corp. | Cook Composites and Polymers Co. |
| The Gates Rubber Company | Gates Corporation |
| General Motors Corporation | General Motors Corporation |
| G.J. Nikolas & Co., Inc. | G.J. Nikolas & Co., Inc. |
| Harley-Davidson, Inc. | Harley Davidson, Inc. |

| | |
|---|---|
| Heico, Inc. | Heico Holding, Inc. |
| Illinois Bronze | Hexion Specialty Coatings, Inc. |
| J&S Tin Mill | Bway Corporation |
| J.L. Clark, Inc. | J.L. Clark, Inc. |
| Kepec Chemical / Henkel Corp. | Cognis Corporation |
| LDR Products | Textron, Inc. |
| MacLean-Fogg Company | MacLean-Fogg Company |
| Marvel Metal | The Marvel Metal Group, Inc. |
| Master Lock Company | Master Lock Company LLC |
| Motorola, Inc. | Motorola, Inc. |
| Parker Pen Company | Newell Rubbermaid Inc. |
| PEER Bearing Co. | PEER Bearing Co. |
| Pioneer Paint Company | Nieder Associates Inc. |
| Playskool | Hasbro, Inc. |
| Pre Finish Metals, Inc. | MSC Engineered Materials and Solutions Group, Inc. |
| | |
| Rheem Manufacturing Company | Rheem Manufacturing Company |
| Sharon Screw Company | Sharon Screw Products, Inc. |
| Shure Incorporated | Shure Incorporated |
| Slick Electro | Unison Industries, LLC |
| Specialty Coatings Company | Becker Specialty Corporation |
| Sundstrand Hydro | Sauer-Danfoss, Inc. |
| Stack-on Products Co. | Stack-on Products Co. |
| Sundstrand Corporation | Hamilton Sundstrand Corporation |
| Tech-Cor | Tech-Cor |
| Universal Chemicals & Coatings, Inc. | Universal Chemicals & Coatings, Inc. |
| U.S. Packaging, Inc. | The Penray Companies, Inc. |
| Williams Healthcare Manufacturing | Standex International Corporation |
| Whittaker Corporation | Whittaker Corporation |
| Wrico Packaging | Wm. Wrigley Jr. Company |

**APPENDIX D**


**REMEDIAL ACTION PLAN**
**(voluminous document filed and identified separately– also available on cd)**

**APPENDIX E**


**LEGAL DESCRIPTION AND MAP OF SITE**

**APPENDIX E**
**LEGAL DESCRIPTION AND MAP OF SITE**


Legal Description of the former Acme Solvent Reclaiming, Inc. ("Acme") Site, which common address is 1915 20th Street, Rockford, Winnebago County, Illinois. The Acme Site is made up of three parcels.


Lot Four (4) in Block Twenty-Five (25) as designated upon the Plat of Syndicate Subdivision of a part of the West Half (1/2) of the Northeast Quarter of Section 36, Township 44 North, Range 1 East of the Third Principal Meridian, Permanent Index Number ("PIN") 11-36-262-003.

The North 75.0 Feet of Lots Five (5) and Six (6) in Block Twenty-Five (25) as designated upon the Plat of Syndicate Subdivision of a part of the West Half (1/2) of the Northeast Quarter of Section 36, Township 44 North, Range 1 East of the Third Principal Meridian, Permanent Index Number ("PIN") 11-36-262-004.

Lot Three (3) in Block Twenty-Five (25) as designated upon the Plat of Syndicate Subdivision of a part of the West Half (1/2) of the Northeast Quarter of Section 36, Township 44 North, Range 1 East of the Third Principal Meridian, Permanent Index Number ("PIN") 11-36-262-002.



## APPENDIX F

## ACME ROCKFORD GROUP TRUST AGREEMENT

**FIRST AMENDED
ACME ROCKFORD GROUP
TRUST AGREEMENT**

WHEREAS, the Grantors have entered a Remedial Action Consent Decree dated

_____ in the matter of *People of the State of Illinois v. Akzo Nobel Coatings Inc., et al.,*

Case No. 3:06-CV-50115 (U.S. District Court, N.D. Illinois, Western Division) (hereinafter,

"Consent Decree"), under which the Grantors have agreed to undertake environmental response

actions and pay certain costs as specified in said Consent Decree; and

WHEREAS, the Consent Decree provides for payment of funds by "Performing Settling

Defendants", "Cash-out Settling Defendants", and "Covenant Beneficiary Settling Defendants",

all as defined in the Consent Decree, into a Trust for the purposes of implementing the

requirements of the Consent Decree.

NOW, THEREFORE, the Acme Rockford Group Trust Agreement declared November 1,

2005, between the Acme Rockford Group, Grantors, and Edward Maher, Trustee, designated the

"Acme Rockford Group Trust" held at National City Bank Acct. No. 981477200, EIN 20-

6735094, is hereby amended as follows.


**I.    GRANTORS**

The Grantors are those parties designated in the Consent Decree as "Performing Settling

Defendants", having organized themselves as the "Acme-Rockford Group", an unincorporated

association, under the "Acme Rockford Group Participation Agreement".

## II.    TRUST FUND PURPOSE

A.    *Purpose.*  The Trust Fund shall be maintained exclusively for the purpose of funding the obligations and duties of the Grantors under the Consent Decree, including:

1.    Receiving payments from Performing Settling Defendants, Cash-out Settling Defendants, and Covenant Beneficiary Settling Defendants as provided under the Consent Decree.

2.    Providing funds to pay contractors and consultants to perform the Work under the Consent Decree;

3.    Providing funds for payments to the State of Illinois as provided under the Consent Decree, including, if assessed, stipulated penalties as provided under the Consent Decree.

4.    Providing funds for administrative expenses and/or consulting fees including fees incurred by attorneys, accountants, administrators and other consultants incurred in performing and/or overseeing the implementation of the Work under the Consent Decree;

5.    Providing funds for payment of the Trustees' fees and expenses incurred in performing their obligations under this Trust Agreement;

6.    Providing funds for the payment of taxes, if any, imposed on the Trust Fund;

7.    Providing funds for other fees and expenses reasonably incurred in furtherance of Grantors' obligations under the Consent Decree;

8.    Distribution of funds to the Grantors as settlements or adjustments, as may be appropriate.

9.    Providing funds for the prosecution of claims against additional parties who may be liable in contribution, cost recovery, or otherwise, for matters addressed in the Consent Decree.

B.    *Administration*.  This Agreement is intended to create a grantor trust and not a partnership, joint venture agreement, or other legally recognizable entity.  No interest or other income shall accrue on the corpus of the Trust Fund.


## III.   TRUSTEE

A.    *Designation*.  Mr. Edward Maher, at the firm of Guyer & Enichen, Rockford, Illinois, designated as Trustee under the Acme Rockford Group Trust Agreement declared November 1, 2005, remains so designated.

B.    *Powers and Duties*. The Trustee shall hold all such funds, and future contributions and deposits made to the Trust, in trust for the benefit of the Grantors, and shall manage, administer, collect, and dispose of such assets pursuant to the terms of this Trust Agreement. The powers and duties of the Trustee are enumerated as:

1.    The Trustee shall receive funds contributed by or on behalf of the Grantors, and by or on behalf of "Cash-out Settling Defendants" and "Covenant Beneficiary Settling Defendants", as provided under the Consent Decree, for deposit in the Trust Fund.  Deposits to the Trust Fund shall be payable to "Acme Rockford Group Trust", EIN 20-6735094, deliverable to the Trustee

2.    The Trustee shall disburse funds from the Trust Fund for the purposes enumerated in Section II above, as directed by the Acme Rockford Group;

3.     The Trustee shall provide periodic reports to the Acme Rockford Group regarding the status of the Trust Fund, including statements of income and disbursements.

4.     If required by law, the Trustee shall timely prepare and file tax returns and notices with respect to income, if any, on the Trust Fund, and/or with respect to payments or distributions from the Trust Fund.

C.     *Service as Trustee.*

1.     The Trustee shall serve at the pleasure of the Acme Rockford Group and may be replaced at any time, with or without cause, by the Acme Rockford Group.  The Trustee shall immediately surrender to the Acme Rockford Group all financial records relating to this Trust upon his or her replacement.

2.     The Trustee may resign as Trustee at any time, and for any reason; provided, however, that such Trustee shall immediately surrender to the Acme Rockford Group all financial records relating to this Trust upon his or her resignation.

3.     The Trustee shall not be personally liable for making any deposits, or disbursements, directed by the Acme Rockford Group, nor for any other matter under this Agreement, except on account of an intentional breach of the Trustee's fiduciary duties under this Agreement.


## IV.     TERMINATION

This Trust shall continue until such time as it is terminated by action of the Acme Rockford Group, but in no event sooner than completion of the Grantors' obligations under the Consent Decree. Upon termination, any balance remaining in the Trust Fund shall be distributed

to the Grantors in accordance with the then-current allocation set forth in the Acme Rockford Group Participation Agreement.

## V.   AMENDMENT

This Trust may be amended at any time by direction of Acme Rockford Group and with the written consent of the State of Illinois as provided under the Consent Decree.

## VI.   BINDING EFFECT OF AGREEMENT

The provisions of this Trust Agreement shall be binding upon the Grantors and the Trustee, their successors and assigns, and all persons, firms, affiliates, attorneys, insurers or agents acting for or on their behalf.

## VII.   DEFINITIONS

Terms used in the Trust Agreement shall be as defined in the Consent Decree.

## VIII.   INCORPORATION BY REFERENCE

The following documents are incorporated herein by reference:

A. Remedial Action Consent Decree entered [date], *People of the State of Illinois v. Akzo Nobel Coatings Inc., et al.*, Case No. 3:06-CV-50115 (U.S. District Court, N.D. Illinois, Western Division).

B. Acme-Rockford Group Participation Agreement, as may be amended from time to time.

## IX. APPLICABLE LAW

This Trust Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

**FIRST AMENDED
ACME ROCKFORD GROUP
TRUST AGREEMENT**

**SIGNATURE PAGE (GRANTOR)**

**IN WITNESS WHEREOF**, the undersigned **GRANTOR** hereby agrees to the terms of this

First Amended Acme Rockford Group Trust Agreement. The undersigned represents that he/she

is duly authorized to execute this Agreement on behalf of the GRANTOR.


Grantor: _____


Signed: _____     Date: _____


Name: _____


Title: _____

**FIRST AMENDED
ACME ROCKFORD GROUP
TRUST AGREEMENT**

**SIGNATURE PAGE (TRUSTEE)**

**IN WITNESS WHEREOF**, the undersigned **TRUSTEE** hereby agrees to the terms of this First

Amended Acme Rockford Group Trust Agreement.


_____     Date:_____

Edward Maher
Guyer & Enichen
2601 Reid Farm Road
Rockford, IL  61114

## APPENDIX G

## COVENANT BENEFICIARY FORM

## APPENDIX G

## COVENANT BENEFICIARY ELECTION FORM

*People of the State of Illinois v. Akzo Nobel Coatings, Inc., et al.*
*Case No. 3:06-cv-50115*

The following entity, by its undersigned representative, elects to become a Covenant Beneficiary in the Remedial Action Consent Decree entered into by the State of Illinois ("State") and Settling Defendants in the action filed in the United States District Court for the Northern District of Illinois, Western Division (the "Court"), entitled People of the State of Illinois v. Akzo Nobel Coatings, Inc., et al., Case No. 3:06-cv-50115 (hereinafter referred to as "RA Consent Decree"):

Company/Individual Name: _____

                                  (Print)

Address: _____

                         _____

The undersigned hereby acknowledges that he/she has received a copy of the RA Consent Decree, and that he/she has had opportunity to review it or seek legal advice regarding its terms, and in return for the rights, covenants and protections provided to Covenant Beneficiaries in the RA Consent Decree, agrees, on behalf of the Covenant Beneficiary, to each and every of the following:

1.     The Covenant Beneficiary Settling Defendant shall pay its agreed upon share of the cost of the Work into the Acme Rockford Group Trust pursuant to the terms of the Acme Rockford Group Trust Agreement.

2.     The Covenant Beneficiary Settling Defendant shall comply with the applicable terms of the RA Consent Decree.

3.     The Covenant Beneficiary covenants not to sue and agrees not to assert any claims or causes of action against the State with respect to the Work, Past Response Costs, or Future Response Costs (all as defined in the RA Consent Decree), the RA Consent Decree, or contributions of Settling Defendants or other Covenant Beneficiaries with respect to the RA Consent Decree, including, but not limited to:

          a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through Sections 106(b)(2), 107, 111, 112, 113 of the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, 9613, or any other provision of law;

          b.     any claims against the State including any department, agency or instrumentality of the State under Section 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613 related to the Site, or

    c.  any claims arising out of response activities at the Site, including claims based on the State's selection of response actions, oversight of response activities or approval of plans for such activities.

4.  The Covenant Beneficiary agrees, as provided in Paragraphs 14 and 162 of the RA Consent Decree, not to oppose entry of the RA Consent Decree or to challenge the terms of the RA Consent Decree or this Covenant Beneficiary Election Form and the Court's jurisdiction to enter and enforce the RA Consent Decree and the Covenant Beneficiary Election Form. Failure of the Covenant Beneficiary to abide by this paragraph renders the rights, covenants and protections applicable to it under the RA Consent Decree null and void.

5.  The Covenant Beneficiary agrees not to sue the Settling Defendants or any other Covenant Beneficiary for matters addressed in the RA Consent Decree as defined therein.

6.  The Covenant Beneficiary does not admit any liability arising out of the transactions or occurrences alleged in the Second Amended Complaint filed in this action or the RA Consent Decree, nor does the Covenant Beneficiary acknowledge that a release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or environment.

7.  The undersigned representative of the Covenant Beneficiary named herein certifies that he/she is fully authorized to agree to the terms and conditions applicable to Covenant Beneficiaries herein and in the RA Consent Decree and to execute and legally bind the Covenant Beneficiary to these terms and conditions. The original form shall be sent to:

       Elizabeth Wallace
       Supervising Attorney
       Illinois Attorney General's Office
       Environmental Bureau
       100 West Randolph Street, 12th Floor
       Chicago, Illinois 60601

A copy of said form shall be mailed to the following:

       Paul Jagiello
       Division of Legal Counsel
       Illinois Environmental Protection Agency
       9511 West Harrison Street
       Des Plaines, Illinois 60016

       Gary Letcher
       Law Office of Gary R. Letcher, PC
       P.O. Box 460
       Ashton, MD 28061

8. Upon the State's approval of this Covenant Beneficiary Election Form, and subject to compliance with the terms of the RA Consent Decree, the rights, covenants and protections contained therein inure to the benefit of the Covenant Beneficiaries.

9. Upon written approval by the State of the addition of each Covenant Beneficiary Settling Defendant, the respective fully-executed Covenant Beneficiary Form shall become part of this Consent Decree.

COVENANT BENEFICIARY:


By: _____

Title: _____

# APPENDIX H

# NOTICE

**APPENDIX H**

**NOTICE**

This instrument prepared by and
mailed after recording to:

[insert owner(s) name and address]

**Property Index Number:**

_____

**LOCATION
OF PROPERTY:**

1915 20th Street, Rockford, Illinois, in
Winnebago County

**FOR RECORDER'S USE ONLY**

**NOTICE OF ACCESS, LAND USE RESTRICTIONS AND
INSTITUTIONAL CONTROLS**

[insert owners name] (the "_____"), the current owners of a parcel of real estate

located in Rockford, Winnebago County, Illinois and more particularly described on Exhibit A,

attached hereto and made a part hereof (the "Property"), hereby makes the following Notice of

Access, Land Use Restrictions and Institutional Controls on this ____ day of _____,

2008.

A.    The Property consists of an approximately ___-acre portion of the former Acme

Solvent Reclamation, Inc. site located at 1915 20th Street, Rockford, Winnebago County, Illinois

("the Site"), which was operated as a solvent reclamation business from approximately 1956 to 1986.

The Site is the subject of a Complaint for cost recovery and declaratory judgment due to past releases of solvents at the Site.

B.     The Illinois Environmental Protection Agency ("Illinois EPA") approved a remedial action for the Site embodied in the Remedial Action Plan approved by the Illinois EPA on _____ (the "RAP") that requires remediation of the Property and the imposition of certain land use restrictions and institutional controls on the Property as set forth in the Remedial Action Consent Decree described herein and that may be set forth in an Environmental Land Use Control ("ELUC") document to be recorded at the Office of the Recorder of Deeds for Winnebago County, Illinois.

C.     The [insert owners] have entered into a Remedial Action Consent Decree to provide access to Performing Settling Defendants and the State of Illinois for the implementation of the RAP and to record and preserve land use restrictions and institutional controls that are part of the remedial action set forth in the RAP.     The Remedial Action Consent Decree was entered on_____, 2008, resolving the case of *State of Illinois v. Akzo Nobel Coatings, et al.*, Civil Action No. 3:06-cv-50115 (N.D. Ill. Western Division).

IN WITNESS WHEREOF, this Notice has been duly executed by the [insert owners] effective as of the date first indicated in this Notice.

_____

[owners name]

_____

[owners name]

STATE OF ILLINOIS         )
                                       ) SS
COUNTY OF WINNEBAGO   )

      I, _____, notary public in and for said county and state aforesaid, do hereby certify that _____ personally known to me to be the same person whose name is subscribed to the foregoing instrument as such _____, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act, and as the free and voluntary act of said Illinois corporation, for the uses and purpose therein set forth.

GIVEN under my hand and Notarial Seal this ___ day of _____, 2008.

SEAL                               _____
                                          Notary Public
My commission expires:

EXHIBIT A

LEGAL DESCRIPTION

**APPENDIX I**


**ACCESS AGREEMENT**

# APPENDIX I

## ACCESS AGREEMENT

This **Access Agreement** (hereinafter, "Agreement") is entered into by the parties in connection with that certain action captioned PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, *vs.* AKZO NOBEL COATINGS INC. *et al.*, (U.S. District Court, Northern District of Illinois, Western Division), Civ. No. 3:06-CV-50115 (hereinafter, the "Action"), for the purpose of subjecting the Property, as defined herein, to specified rights of access.

WHEREAS, the Property, located at [1911 20th Avenue, designated as Block 25 Lot 3 . . .], City of Rockford, Winnebago County, Illinois, as described and depicted on the attached exhibit, constitutes a substantial part of the site of former operations of Acme Solvents Reclaiming, Inc., where the treatment, storage, and/or disposal of hazardous substances may have occurred, and

WHEREAS, the Complaint in the Action seeks payment of costs incurred by Plaintiff (hereinafter, the "State") for environmental response action at and in connection with the Property, and declaratory judgment that defendants are liable for costs that may be incurred in the future, and

WHEREAS, the Parties hereto have entered into a Consent Decree resolving the State's claims in the Action, under which certain Defendants ("Performing Settling Defendants", as defined and identified in the Consent Decree) shall pay the State's past and future costs, and shall undertake specified further response actions at and in connection with the Property (hereinafter, the "Work", as defined in the Consent Decree), and

WHEREAS, the Consent Decree provides that Owners of the Property ("Owner Settling Defendants") shall provide access to the Property to the State and to Performing Settling Defendants to conduct the Work and otherwise effectuate the purposes of the Consent Decree.

NOW, THEREFORE, Owner Settling Defendant and Performing Settling Defendants, in exchange for and in consideration of the mutual covenants set forth in the Consent Decree, hereby agree as follows:

1. Owner Settling Defendant grants to Performing Settling Defendants, their agents, employees, personnel and contractors, specifically including without limitation MWH Americas Inc. and its employees, personnel, contractors and subcontractors, a license to enter the Property at all times and without prior notice, for the purpose of conducting the Work, and for other purposes solely in furtherance of the parties obligations under the Consent Decree.

2. Owner Settling Defendant shall not unreasonably interfere with conduct of the Work by Performing Settling Defendants and the State.

3. Performing Settling Defendants shall not unreasonably interfere with Owner Settling Defendant's use of and access to the Property, except as is necessary for the conduct of the Work and to otherwise effectuate the requirements of the Consent Decree.

4. This Agreement shall be binding upon Owner Settling Defendant and its successors and assigns, including any grantee, transferee, tenant or lessee, and shall run with the land, subject to termination as set forth herein. Until terminated, a copy of this Agreement shall be incorporated into any instrument conveying any interest in the Property.

5. Owner Settling Defendant represents and warrants that it is the sole owner of the Property and has the power and authority to enter into this Agreement.

6. Within thirty (30) days after execution of this Agreement, Owner Settling Defendant shall cause it to be duly recorded at the Recorders Office of Winnebago County, Illinois, and within ten (10) days thereafter shall provide proof of such recording to the State and Performing Settling Defendants. However, this Agreement shall be binding and effective notwithstanding any failure to record.

7. This Agreement shall terminate upon completion of the Work as documented by the Illinois Environmental Protection Agency's ("Illinois EPA") approval of the Remedial Action Completion Report ("RACR") as set forth in the Consent Decree. The Performing Settling Defendants shall provide notice of the Illinois EPA's approval of the RACR to Owner Settling Defendant within twenty-one (21) days of receipt, and Owner Settling Defendant may thereafter record such notice.

8. Notice of any action or communication under this Agreement shall be provided to:

for the State:

Andrew Frierdich
Project Manager
State Sites Unit
Illinois Environmental
Protection Agency
1021 North Grand Avenue East
P.O. Box 19276
Springfield, Illinois 62794-9276

for Performing Settling Defendants:

Gary Letcher
Law Office of Gary R. Letcher, PC
P.O. Box 460
Ashton, MD   28061

for Owner Settling Defendant:

The Undersigned represent and certify that they are authorized to execute this **Access Agreement.**

WITNESS THE FOLLOWING SIGNATURES:

**Owner Settling Defendant**:

Printed Name: _____

Its (officer): _____

Signed: _____

Date: _____

[NOTARY]

**Performing Settling Defendants:**

Printed Name: _____

Its (officer): _____

Signed: _____

Date: _____

[NOTARY]

[Attach legal description and map of each property]

**APPENDIX J**


**FORM ELUC**

# APPENDIX J

PREPARED BY:

Name:

Address:

RETURN TO:

Name:     Bart and Karen Anderson
Address:  33 Briar Lane
          Rockford, IL  61103

_____

## THE ABOVE SPACE FOR RECORDER'S OFFICE

_____

## ENVIRONMENTAL LAND USE CONTROL

THIS ENVIRONMENTAL LAND USE CONTROL ("ELUC") is made this ___ day of_____, 2008, by Bart and Karen Anderson ("Property Owners") on an area of land described on Attachment A ("Property") on a portion of the real property located at the common address 1915 20th Street, Rockford, Winnebago County, Illinois, ("Site").

**Property Index Number:**     11-36-262-003

WHEREAS, 415 ILCS 5/58.17 and 35 Ill. Adm. Code 742 provide for the use of an ELUC as an institutional control in order to impose land use limitations or requirements related to environmental contamination.  The limitations and requirements contained herein are necessary in order to protect against exposure to contaminated soil or groundwater, or both, that may be present on the property as a result of treatment, storage and/or disposal of hazardous substances at the Property.  Under 35 Ill. Adm. Code 742, the use of risk-based, site-specific remediation objectives may require the use of an ELUC on real property, and the ELUC may apply to certain physical features (e.g., engineered barriers, monitoring wells, caps, etc.).

WHEREAS, risk-based, site-specific remediation objectives were used in the Remedial Action Plan which is a part of the Remedial Action Consent Decree ("RA Consent Decree")

entered in the matter of ***People of the State of Illinois v. Akzo Nobel Coatings, et al.***, Civil Action No. 3:06-cv-50115 (N.D. Ill. Western Division); therefore, an ELUC as an institutional control is required by the RA Consent Decree.

NOW, THEREFORE, the recitals set forth above are incorporated by reference as if fully set forth herein, and the Property Owner agrees as follows:

Section One. Property Owners do hereby establish an ELUC on the real estate known as the "Property", which is a portion of the "Site" situated in the County of Winnebago, State of Illinois and further described in Exhibit A attached hereto. The Owner does not establish an ELUC on the entire Site, rather the ELUC applies to the legally described Property as a portion of the Site. Attached as Exhibit A are site maps that show the legal boundary of the Property to which the ELUC applies and the legal boundary of the Site in which the Property lies. Attachment B shows the horizontal and vertical extent of the disposal materials (source).

Section Two. Property Owners represent and warrants he/she is the current owner of the Property and has the authority to record this ELUC on the chain of title for the Property with the Office of the Recorder or Registrar of Titles in Winnebago County, Illinois.

Section Three. The Property Owner hereby agrees, for himself/herself, and his/her heirs, grantees, successors, assigns, transferees and any other owner, occupant, lessee, possessor or user of the Property or the holder of any portion thereof or interest therein, shall:
INSERT RESTRICTIONS
1)

2)

3)

4)

Section Four. This ELUC is binding on the Property Owner, his/her heirs, grantees, successors, assigns, transferees and any other owner, occupant, lessee, possessor or user of the Property or the holder of any portion thereof or interest therein. This ELUC shall apply in perpetuity against the Property and shall not be released until the Property is deemed suitable for unrestricted use and the Illinois Environmental Protection Agency determines in writing that there is no longer a need for this ELUC as an institutional control and a new ELUC is recorded on the Property stating that no further remediation is necessary.

Section Five. Information regarding the remediation performed on the Property and the Site is available at the Acme Solvents Site Document Repository at the Rockford Public Library. This information is also available on line at: _____.

Section Six. The effective date of this ELUC shall be the date that it is officially recorded in the chain of title for the Property to which the ELUC applies.

WITNESS the following signatures:

Property Owner(s)

By:_____

Its:_____

Date:_____


WITNESS the following signatures:

Property Owner(s)

By:_____

Its:_____

Date:_____

STATE OF ILLINOIS )
) SS:
COUNTY OF WINNEBAGO )

I, _____the undersigned, a Notary Public for said County and State, DO HEREBY CERTIFY, that Bart and Karen Anderson, personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that in said capacities they signed and delivered the said instrument as their free and voluntary act for the uses and purposes therein set forth.

Given under my hand and official seal, this _____ day of_____2008.

_____

Notary Public


State of _____ )
)S.S.
County of Winnebago )

I, _____, a notary public, do hereby certify that before me this day in person appeared_____, each severally acknowledged that they signed and delivered the foregoing instrument as the Property Owner(s) herein set forth, and as their own free and voluntary act, for the uses and purposes herein set forth.

Given under my hand and seal this _____ day of _____, 2008.

_____

Notary Public